```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

STEVEN LONG, DYLAN RANDALL, ERIC   :
VAUGHN and CHARLES YOO, on behalf
of themselves and all others       :   14 Civ. 6233 (HBP)
similarly situated,
                                   :   ORDER GRANTING
                 Plaintiffs,           PRELIMINARY
                                   :   APPROVAL OF
    -against-                          SETTLEMENT
                                   :   STIPULATION
HSBC USA INC. and HSBC BANK USA,       AND OTHER
N.A.,                              :   RELIEF, IN PART

                 Defendants.       :

----------------------------------X
```

PITMAN, United States Magistrate Judge:

I. Introduction

Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., the New York Labor Law Sections 650 et seq. and various California labor laws, including the Industrial Welfare Commission's California Wage Order 4-2001, codified as Cal. Code Regs. tit. 8, § 11040, California Labor Code Sections 201-03, 218.5, 226, 226.7, 510, 512, 1174, 1174.5 and 1194 and the California Business and Professions Code Sections 17200 et seq. By notice of motion dated February 23, 2015, plaintiffs move for (1) the preliminary approval of the parties' settlement stipulation; (2) conditional

certification pursuant to Fed.R.Civ.P. 23(a) and (b)(3) of two sub-classes of persons asserting claims under New York and California labor laws; (3) appointment of Outten & Golden LLP, Fitapelli & Schaffer, LLP, the Lee Litigation Group PLLC and the Shavitz Law Group, P.A. as class counsel; (4) preliminary approval of a proposed notice of class action settlement and a proposed notice of collective action settlement and (5) an order directing the distribution of the proposed notices (Docket Item 22).  The parties have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c) (Docket Item 6).  For the reasons set forth below, the motion is granted in part and denied in part.

II.  <u>Facts</u>

        Plaintiffs worked as premium mortgage consultants and retail mortgage consultants, or in substantially similar positions, for HSBC USA Inc. and HSBC Bank USA, N.A. at HSBC branches nationwide (the "Covered Positions") and were classified by defendants as exempt from overtime pay during at least one of the applicable limitations periods (Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class

Counsel, and Approval of Plaintiffs' Proposed Notices of Settlement, dated February 23, 2015, (Docket Item 24) ("Swartz Decl.") ¶¶ 13, 23 & Joint Stipulation of Settlement and Release ("Proposed Settlement Agreement") §§ 1.8, 1.10, annexed thereto). The proposed settlement covers three overlapping groups of plaintiffs: (1) all individuals who were employed in the Covered Positions for at least fifteen days between December 12, 2010 and January 31, 2014 ("FLSA Collective"), (2) all individuals who were employed in the Covered Positions for at least fifteen days in the State of New York between December 12, 2007 and January 31, 2014 ("New York Class") and (3) all individuals who were employed in the Covered Positions for at least fifteen days in the State of California between December 12, 2009 and January 31, 2014 ("California Class") (Proposed Settlement Agreement §§ 1.16, 1.17; Swartz Decl. ¶ 29). The first group captures those individuals who have a claim under the FLSA, the second group captures those who have a claim under the NYLL and the third group captures those who have a claim under the California wage laws (Proposed Settlement Agreement §§ 1.16, 1.17; Swartz Decl. ¶ 29).

The proposed settlement provides that defendants will pay a total of $6,982,000 to cover payments to participating class members, attorneys' fees and costs, service awards,

administrative fees and other expenses (Proposed Settlement
Agreement § 3.1; Swartz Decl. ¶ 27).  Each class member will
receive payment based on the number of weeks worked during the
relevant time periods, as reflected in defendants' business
records (Proposed Settlement Agreement § 3.4(C); Swartz Decl.
¶ 28).  Individual awards from the net settlement fund will be
allocated to class and collective members proportionately based
upon the following point system:  (1) four points per week worked
to members of the New York Class employed from December 12, 2007
through April 8, 2011; (2) five points per week worked to members
of the New York Class employed from April 9, 2011 through January
31, 2014; (3) six points per week worked to members of the
California Class and (4) three points per week worked to members
of the FLSA Collective who were not employed in New York or
California (Proposed Settlement Agreement § 3.4).  The points
allocated to each class reflect the value of the claims and
monetary remedies available under each of the applicable federal
and state laws, including liquidated damages (Swartz Decl. ¶ 30).
Each class member's points will be divided by the total of all of
the class members' points and then the net settlement fund amount
will be multiplied by that quotient to calculate the class
member's proportionate share (Proposed Settlement Agreement
§ 3.4).  Plaintiffs' counsel estimates that class members who

participate in the settlement will receive an average of $9,100 each (Swartz Decl. ¶ 31).

The settlement agreement also provides that (1) class counsel will seek approval of an award of not more than one-third of the settlement amount ($2,327,333.33) as fees, plus costs and expenses; (2) plaintiffs Steven Long, Dylan Randall and Eric Vaughn, who will attend the fairness hearing, will each seek a service award of $10,000; (3) plaintiff Charles Yoo and early opt-in plaintiffs Ross Bowman, Lou Ann Burgio, Anthony Monetti, Cynthia Nostro and Kevin Petho will each seek a service award of $7,500; (4) $50,000 will be set aside to cover claims administration fees estimated at $19,000 and (5) $15,000 of the $50,000 set aside for the Claims Administrator will be allocated toward a penalty payment pursuant to the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698 et seq., with 75% paid to the California Labor and Workforce Development Agency and 25% returned to the settlement fund for distribution pursuant to the settlement agreement (Proposed Settlement Agreement §§ 3.3(A), 3.2(A), 3.1(D)-(E); Swartz Decl. ¶ 32).[1]  Defendants do not oppose this motion (Memorandum of Law

---

[1]The proposed settlement is lengthy and highly detailed. The summary set forth herein highlights only the major aspects of the agreement.

in Support of Plaintiffs' Motion for Preliminary Approval of
Class Action Settlement, Conditional Certification of the
Settlement Class, Appointment of Plaintiffs' Counsel as Class
Counsel, and Approval of Plaintiffs' Proposed Notices of
Settlement, dated February 23, 2015, (Docket Item 23) ("Pls.
Mem.") at 1).

III.  Analysis

    A.  Preliminary Approval
       of the Class Settlement

     The preliminary determination of fairness "is at most a
determination that there is what might be termed 'probable cause'
to submit the proposal to class members and hold a full-scale
hearing as to its fairness." In re Traffic Exec. Ass'n Eastern
R.Rs., 627 F.2d 631, 634 (2d Cir. 1980).  "A 'presumption of
fairness, adequacy, and reasonableness may attach to a class
settlement reached in arm's-length negotiations between
experienced, capable counsel after meaningful discovery.'" Wal-
Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 117 (2d Cir.
2005), quoting Manual for Complex Litigation, § 30.42 (3rd ed.
1995).

     The principal aspects of the settlement were the result
of productive pre-litigation discussions by the parties' counsel

over several months; a lengthy mediation session on July 23, 2014
with an experienced JAMS employment mediator, Michael D. Young,
and continued negotiations by the parties' counsel for several
months thereafter to finalize the agreement (Swartz Decl. ¶¶ 17-
21).  The parties were represented by capable counsel, all of
whom have extensive experience in employment litigation and whose
firms are generally regarded as being among the top employment
law firms in the District (see Swartz Decl. ¶ 12).  Counsel
represented their clients diligently and zealously.

        In addition to the presumption of fairness that results
from the manner in which the settlement was reached, the factors
identified in City of Detroit v. Grinnell Corp., 495 F.2d 448,
463 (2d Cir. 1974), abrogated on other grounds by Goldberg v.
Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000),[2] to the extent

────────────────────

    [2]The Grinnell factors include:

        (1) the complexity, expense and likely duration of the
        litigation, (2) the reaction of the class to the
        settlement, (3) the stage of the proceedings and the
        amount of discovery completed, (4) the risks of
        establishing liability, (5) the risks of establishing
        damages, (6) the risks of maintaining the class action
        through the trial, (7) the ability of the defendants to
        withstand a greater judgment, (8) the range of
        reasonableness of the settlement fund in light of the
        best possible recovery and (9) the range of
        reasonableness of the settlement fund to a possible
        recovery in light of all the attendant risks of
        litigation.

                                        (continued...)

they are relevant at the preliminary stage, also warrant
preliminary approval of the settlement.

      1.   The Complexity, Expense and
            Likely Duration of the Litigation

Litigation would likely be lengthy, expensive and
require extensive discovery and briefing since the parties would,
no doubt, dispute liability, the damages owed and the
appropriateness of class certification.  In addition, given the
magnitude and geographic reach of the case and the amount of
money involved, any trial would be fact-intensive and an appeal
would probably be taken regardless of the outcome of a trial or
dispositive motion.

      2.   The Stage of the Proceedings and
            the Amount of Discovery Completed

Although a settlement was reached before this action
was commenced, counsel has demonstrated that both sides were well
acquainted with the facts.  Counsel investigated the merits of
potential claims and defenses; interviewed plaintiffs, early opt-
in plaintiffs and other former HSBC employees and obtained

---

[2](...continued)
City of Detroit v. Grinnell Corp., supra, 495 F.2d at 463
(internal citations omitted).

relevant documents, including plaintiffs' pay records and
compensation plans (Swartz Decl. ¶¶ 14-16).  Counsel engaged in
informal discovery, exchanging documents and producing damages
calculations (Swartz Decl. ¶¶ 19, 25).  Plaintiffs' counsel was
also able to interview a "high-level corporate representative"
with respect to the duties and compensation of the Covered
Positions (Swartz Decl. ¶ 26).  Both sides were sufficiently
familiar with the facts to make an intelligent decision with
regard to the merits of the case.

     3.   The Risks of Establishing
          Liability and Damages    

     "Litigation inherently involves risks," both in
establishing liability and damages.  In re PaineWebber Ltd.
P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (Stein,
D.J.), aff'd, 117 F.3d 721 (2d Cir. 1997) (per curiam), citing In
re Ira Haupt & Co., 304 F. Supp. 917, 934 (S.D.N.Y. 1969)
(Motley, D.J.) ("If settlement has any purpose at all, it is to
avoid a trial on the merits because of the uncertainty of the
outcome.").  Here, the claims and defenses are fact-intensive and
present risks, including the potential inability to prove the
number of hours worked and amount of unpaid overtime wages;
overcoming the potential argument that class certification or a

collective action are not appropriate and the risk that recovery,
if any, could take years and would require significant discovery
and expense.  In addition, plaintiffs would need to present
evidence regarding the nature of the responsibilities of the
Covered Positions in order to prove that plaintiffs were
misclassified and were not subject to the FLSA's outside sales
exemption, 29 U.S.C. § 541.100, or other exemptions.  Thus, the
fourth and fifth Grinnell factors support preliminary approval.

    4. The Risks of Maintaining the
      <u>Class Action through the Trial</u>

   The risk of maintaining collective and class
certification throughout trial also weighs in favor of
preliminary approval.  A contested motion for certification would
likely require extensive discovery and briefing, and, if granted,
could potentially result in an interlocutory appeal pursuant to
Fed.R.Civ.P. 23(f) or a motion to decertify by defendants,
requiring additional briefing.  In addition, here, the class
members work in HSBC branches across the country and are subject
to different state labor laws, making a showing of similarity
more difficult than the typical wage and hour case.  "Settlement
eliminates the risk, expense, and delay inherent in the
litigation process."  <u>Sukhnandan v. Royal Health Care of Long</u>

Island LLC, 12 Civ. 4216 (RLE), 2014 WL 3778173 at *7 (S.D.N.Y. July 31, 2014) (Ellis, M.J.).

       5.   The Ability of the Defendants
           to Withstand a Greater Judgment

      Plaintiffs state that it is unclear whether defendants could withstand a greater judgment (Pls. Mem. at 17).  However, given defendants' size and stature in the banking and financial market, there can be little doubt that it could pay a substantially greater judgment.  HSBC Bank USA, N.A. is the principal United States banking subsidiary of HSBC USA Inc., whose consolidated financial statements for the year ending December 31, 2014 show an annual net income of $354 million. HSBC USA Inc., Annual Report (Form 10-K) (Feb. 23, 2015). Nevertheless, this fact, by itself, does not render the proposed settlement unfair.  In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000) (Kram, D.J.), aff'd sub nom., D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001); accord Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005).  At best, this factor is neutral and does not preclude preliminary approval.

6.   The Range of Reasonableness of the
Settlement Fund in Light of the
Best Possible Recovery and in Light
<u>of All the Attendant Risks of Litigation</u>

"'[T]here is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  <u>Frank v. Eastman Kodak Co.</u>, <u>supra</u>, 228 F.R.D. at 186, <u>quoting</u> <u>Newman v. Stein</u>, 464 F.2d 689, 693 (2d Cir. 1972). The inquiry with respect to this factor is to "see whether the settlement 'falls below the lowest point in the range of reasonableness.'"  <u>In re Gache</u>, 164 F.3d 617 (2d Cir. 1998), 1998 WL 646756 at *1 (2d Cir. Apr. 16, 1998) (summary order), <u>quoting</u> <u>Newman v. Stein</u>, <u>supra</u>, 464 F.2d at 693.  "Moreover, when a settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor."  <u>Massiah v. Health Plan, Inc.</u>, No. 11-cv-05669 (BMC), 2012 WL 5874655 at *5 (E.D.N.Y. Nov. 20, 2012) (internal quotation marks and citation omitted).

Here, the $6,982,000 settlement, less attorneys' fees and costs, service awards, claims administration fees and other expenses, appears to fall within the range of reasonableness.

Plaintiffs' counsel notes that each class member's payment will
be based upon the number of weeks he or she worked during the
relevant time periods and that the approximate payment to each
participating class member will average $9,100 (Pls. Mem. at 18;
Swartz Decl. ¶ 31).  In light of the best possible recovery[3] and
the aforementioned risks of litigation, this settlement provides
a fair recovery.  Thus, the eighth and ninth <u>Grinnell</u> factors
weigh in favor of preliminary approval.

    8.  <u>Summary</u>

Because the majority of the relevant factors
demonstrate the reasonableness of the settlement, I find that the
proposed settlement warrants preliminary approval.

    B.  Conditional Certification of the
       <u>New York and the California Classes</u>

"Before certification is proper for any purpose --
settlement, litigation, or otherwise -- a court must ensure that
the requirements of Rule 23(a) and (b) have been met." <u>Denney v.
Deutsche Bank AG</u>, 443 F.3d 253, 270 (2d Cir. 2006); <u>accord Cohen</u>

---

[3]As discussed more fully below, the notice to class members
shall be revised in order to explain how a class member's damages
would be calculated at trial were the class member to continue
litigating his or her claims, informing the class member of his
or her best possible recovery.

v. J.P. Morgan Chase & Co., 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009); Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 349 (E.D.N.Y. 2006).

Class certification under Rule 23(a) requires that

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

If each of these four threshold requirements are met, class certification is appropriate if the action also satisfies one of the three alternative criteria set forth in Rule 23(b). In this case, plaintiffs argue that class certification is proper under Rule 23(b)(3) (Pls. Mem. at 23-25), which provides that a class action may be maintained where:

the questions of law or fact common to class members predominate over any questions affecting only individual members, and [where] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The party seeking class certification bears the burden of establishing each of these elements by a "preponderance of the evidence." Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008); see Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997); Fedotov v.

14

Peter T. Roach & Assocs., P.C., 354 F. Supp. 2d 471, 478
(S.D.N.Y. 2005) (Haight, D.J.).  Although the Court of Appeals
for the Second Circuit has "directed district courts to apply
Rule 23 according to a liberal rather than a restrictive
interpretation," In re NASDAQ Mkt.-Makers Antitrust Litig., 169
F.R.D. 493, 504 (S.D.N.Y. 1996) (Sweet, D.J.), citing Korn v.
Franchard Corp., 456 F.2d 1206, 1208-09 (2d Cir. 1972) and Green
v. Wolf Corp., 406 F.2d 291, 298, 301 (2d Cir. 1978), class
certification should not be granted unless, after a "'rigorous
analysis,'" the court is satisfied that Rule 23's requirements
have been met.  Spagnola v. Chubb Corp., 264 F.R.D. 76, 92
(S.D.N.Y. 2010) (Baer, D.J.), quoting In re Initial Pub.
Offerings Sec. Litig., 471 F.3d 24, 33 (2d Cir. 2006).  Doubts
concerning the propriety of class certification should be
resolved in favor of class certification.  See Levitt v. J.P.
Morgan Sec., Inc., 710 F.3d 454, 464 (2d Cir. 2013) (on appellate
review, less deference is given to decisions denying class
certification than to decisions granting certification).

        The proposed Rule 23 settlement classes -- the New York
Class and the California Class -- meet the requirements for Rule
23 certification.

1.   <u>Numerosity</u>

Plaintiffs' counsel estimates that there are approximately 414 Rule 23 class members, 331 in the New York Class and 83 in the California Class (Supplemental Declaration of Justin M. Swartz in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of Plaintiffs' Proposed Notices of Settlement, dated September 10, 2015 (Docket Item 28) ¶¶ 4, 5; <u>see also</u> Pls. Mem. at 20; Swartz Decl. ¶ 33).  These numbers easily meet the numerosity requirement.  <u>Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.</u>, 772 F.3d 111, 120 (2d Cir. 2014) ("Numerosity is presumed for classes larger than forty members."); <u>see also</u> <u>Burka v. New York City Transit Auth.</u>, 110 F.R.D. 595, 601 (S.D.N.Y. 1986) (Goettel, D.J.) ("[E]ach subclass and its respective representative must independently meet the requirements for maintenance of a class action." (internal quotation marks and citation omitted)).

2.   <u>Commonality</u>

Rule 23(a) also requires the existence of questions of law or fact common to the class.  The Supreme Court has

emphasized that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  Wal-Mart Stores, Inc. v. Dukes, --- U.S. ---, ---, 131 S. Ct. 2541, 2551 (2011), quoting Gen. Tel Co. v. Falcon, 457 U.S. 147, 157 (1982).  "[S]ince '[a]ny competently crafted class complaint literally raises common "questions,"'" the court must assess whether the common questions are capable of "generat[ing] common answers apt to drive the resolution of the litigation." Wal-Mart Stores, Inc. v. Dukes, supra, 131 S. Ct. at 2551 (emphasis in original), quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-32 (2009).  "[P]laintiffs may meet the commonality requirement where the individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct by a single system.'"  Fox v. Cheminova, Inc., 213 F.R.D. 113, 126 (E.D.N.Y. 2003), quoting Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997) (per curiam).  "'Even a single common legal or factual question will suffice.'"  Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 162 (S.D.N.Y. 2014) (Oetken, D.J.), quoting Freeland v. AT&T Corp., 238 F.R.D. 130, 140 (S.D.N.Y. 2006) (Cote, D.J.).

     Plaintiffs claim, and defendants do not dispute, that all class members worked in the Covered Positions and were

subject to the same HSBC policy, misclassifying them as exempt from receiving overtime pay and failing to pay them the mandated overtime wages (Pls. Mem. at 21).  This is sufficient to meet the commonality requirement.  See Sukhnandan v. Royal Health Care of Long Island LLC, supra, 2014 WL 3778173 at *2 (allegations that, among other things, defendants failed to pay overtime premiums in violation of federal and state law satisfied commonality requirement); Beckman v. KeyBank, N.A., 293 F.R.D. 467, 473 (S.D.N.Y. 2013)(Ellis, M.J.) (commonality requirement met by claims that defendants, among other violations, misclassified plaintiffs as exempt and failed to pay overtime compensation).

### 3.  Typicality

Rule 23(a)'s third requirement, typicality, ensures that "'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  Marisol A. v. Giuliani, supra, 126 F.3d at 376 (alteration in original), quoting Gen. Tel. Co. v. Falcon, supra, 457 U.S. at 157 n.13.  The typicality requirement is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  In

re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d
Cir. 2009) (internal quotation marks and citation omitted);
Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 155
(S.D.N.Y. 2002) (Berman, D.J.).

     "The commonality and typicality requirements often
'tend to merge into one another, so that similar considerations
animate analysis' of both." Brown v. Kelly, 609 F.3d 467, 475
(2d Cir. 2010), quoting Marisol A. v. Giuliani, supra, 126 F.3d
at 376.

     Plaintiffs satisfy the typicality requirement of Rule
23(a) because they allege, and defendants do not contest, that
they were all employed by defendants' branches to do similar work
and were misclassified as exempt and did not receive overtime pay
under the same policy (Pl. Mem. at 21-22).  This is sufficient to
satisfy the typicality requirement.

    4.  Adequacy

     Pursuant to Rule 23(a)'s final requirement, "the named
plaintiffs must 'possess the same interest[s] and suffer the same
injur[ies] as the class members.'"  In re Literary Works in Elec.
Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir. 2011)
(alterations in original), quoting Amchem Prods., Inc. v.
Windsor, supra, 521 U.S. at 625-26.  "'Adequacy is two fold:  the

proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members.'" <u>In re Literary Works in Elec. Databases Copyright Litig.</u>, <u>supra</u>, 654 F.3d at 249, <u>quoting</u> <u>Denney v. Deutsche Bank AG</u>, <u>supra</u>, 443 F.3d at 268.

The named plaintiffs,[4] like the class members of both of the sub-classes, worked for defendants in the Covered Positions and allege they were misclassified and are owed unpaid overtime compensation.  In addition, there is no evidence or reason to believe that there is any conflict of interest between the named plaintiffs and the other members of the sub-classes. Accordingly, plaintiffs also satisfy the adequacy requirement.

     5.   Rule 23(b)(3)'s
          <u>Requirements</u>

Rule 23(b)(3) requires that a plaintiff seeking to represent a class establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to

---

[4]Long, Randall and Vaughn worked for defendants in one of the Covered Positions in New York, and Yoo worked for defendants in one of the Covered Positions in California.

other available methods for fairly and efficiently adjudicating
the controversy."  Fed.R.Civ.P. 23(b)(3).

   a. <u>Predominance</u>

  The Court of Appeals explained the predominance
requirement of Rule 23(b)(3) in <u>Moore v. PaineWebber, Inc.</u>, 306
F.3d 1247, 1252 (2d Cir. 2002):

> "The Rule 23(b)(3) predominance inquiry tests
> whether proposed classes are sufficiently cohesive to
> warrant adjudication by representation."  <u>Amchem
> Prods., Inc. v. Windsor</u>, 521 U.S. 591, 623, 117 S. Ct.
> 2231, 138 L.Ed.2d 689 (1997).  It is a more demanding
> criterion than the commonality inquiry under Rule
> 23(a).  <u>Id.</u> at 623-24, 117 S. Ct. 2231.  Class-wide
> issues predominate if resolution of some of the legal
> or factual questions that qualify each class member's
> case as a genuine controversy can be achieved through
> generalized proof, and if these particular issues are
> more substantial than the issues subject only to
> individualized proof.  [<u>In re Visa Check/MasterMoney
> Antitrust Litig.</u>, 280 F.3d 124, 136 (2d Cir. 2001)].

<u>See also</u> <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 549 (2d Cir. 2010)
("Economies of time, effort, and expense in fully resolving each
plaintiff's claim will only be served, and the predominance
requirement satisfied, if the plaintiffs can show that some . . .
questions can be answered with respect to the members of the
class as a whole through generalized proof and that those common
issues are more substantial than individual ones."  (internal
quotation marks, alterations and citations omitted)); <u>Flores v.</u>

Anjost Corp., 284 F.R.D. 112, 130 (S.D.N.Y. 2012) (McMahon, D.J.).

Plaintiffs' counsel contends that the predominance requirement is satisfied by the common claim that plaintiffs were misclassified as exempt employees and did not receive overtime compensation (Pl. Mem. at 23-24). Defendants do not dispute this contention. The central issue in this litigation is whether plaintiffs were subject to the FLSA's outside sales exemption or other exemptions which would justify defendants' failure to pay them overtime compensation. Defendants do not contend that the duties of the covered positions varied from branch to branch or state to state. Thus, I conclude that predominance is met here. See generally Brown v. Kelly, supra, 609 F.3d at 484 ("[W]here plaintiffs were allegedly aggrieved by a single policy of the defendants, and there is strong commonality of the violation and the harm, this is precisely the type of situation for which the class action device is suited." (internal quotation marks and citation omitted)); Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 200 (S.D.N.Y. 2011) (Sand, D.J.).

b. Superiority

Rule 23(b)(3) also requires plaintiffs to demonstrate that class-wide adjudication is "superior to other available

22

methods for fairly and efficiently adjudicating the controversy."
In making this determination, the court must balance "the
advantages of a class action against those of alternative
available methods of adjudication."  Anwar v. Fairfield Greenwich
Ltd., 289 F.R.D. 105, 114 (S.D.N.Y. 2013) (Marrero, D.J.),
vacated and remanded on other grounds sub. nom, St. Stephen's
Sch. v. PricewaterhouseCoopers Accountants N.V., 570 F. App'x 37
(2d Cir. 2014) (summary order).  Rule 23(b)(3) sets forth four
non-exhaustive factors relevant to the superiority inquiry:  "the
class members' interests in individually controlling the
prosecution . . . of separate actions," "the extent and nature of
any litigation concerning the controversy already begun by . . .
class members," "the desirability or undesirability of
concentrating the litigation of the claims in the particular
forum" and "the likely difficulties in managing a class action."
Fed.R.Civ.P. 23(b)(3)(A)-(D).

        First, litigation by way of a class action is more
economically sensible due to plaintiffs' limited financial
resources and the relatively modest size of any individual's
recovery.  A class action is likely the only means by which all
plaintiffs can practically adjudicate their state law claims.
See Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 373
(S.D.N.Y. 2007) (McMahon, D.J.); McBean v. City of New York, 228

F.R.D. 487, 503 (S.D.N.Y. 2005) (Lynch, then D.J., now Cir. J.).
Second, plaintiffs are unaware of any pending litigation by
individual class members concerning this controversy (Pl. Mem. at
24-25), and, third, concentrating this litigation in the Southern
District of New York is appropriate because many of the
individuals were employed in the Covered Positions in this
District.  Finally, class adjudication as opposed to multiple
individual actions, potentially in multiple jurisdictions, will
conserve judicial resources and provide a fair and consistent
outcome.  See Murphy V. LaJaunie, 13 Civ. 6503 (RJS), 2015 WL
4528140 at *7 (S.D.N.Y. July 24, 2015) (Sullivan, D.J.).  Thus,
the superiority requirement is also met here.

      6.  Summary

      Accordingly, for all the above reasons, I conditionally
certify, pursuant to Rule 23(a) and (b)(3), the New York Class
consisting of all individuals who were employed for at least
fifteen days in Covered Positions in the State of New York from
December 12, 2007 through January 31, 2014 and the California
Class consisting of all individuals who were employed for at
least fifteen days in Covered Positions in the State of
California from December 12, 2009 through January 31, 2014.

C.   Appointment
     of Class Counsel

I appoint the firms of Outten & Golden LLP, Fitapelli & Schaffer, LLP, Lee Litigation Group PLLC and Shavitz Law Group, P.A. as class counsel.  These firms routinely represent plaintiffs in employment litigation in this District and have appeared in many major FLSA and state labor law cases, including Irizarry v. Catsimatidis, 722 F.3d 99 (2d Cir. 2013), cert. denied, 134 S. Ct. 1516 (2014) (Outten & Golden LLP); Behzadi v. Int'l Creative Mgmt. Partners, LLC, 14 Civ. 4382 (LGS), 2015 WL 4210906 (S.D.N.Y. July 9, 2015) (Outten & Golden LLP); Hamadou v. Hess Corp., 12 Civ. 0250 (JLC), 2015 WL 3824230 (S.D.N.Y. June 18, 2015) (Fitapelli & Shaffer, LLP and Outten & Golden LLP); Aboud v. Charles Schwab & Co., 14 Civ. 2712 (PAC), 2014 WL 5794655  (S.D.N.Y. Nov. 4, 2014) (Outten & Golden LLP and Shavitz Law Group, P.A.); Zeltser v. Merrill Lynch & Co., 13 Civ. 1531 (FM), 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) (Outten & Golden LLP and Shavitz Law Group, P.A.); Flores v. One Hanover, LLC, 13 Civ. 5184 (AJP), 2014 WL 2567912 (S.D.N.Y. June 9, 2014) (Fitapelli & Schaffer, LLP); Viafara v. MCIZ Corp., 12 Civ. 7452 (RLE), 2014 WL 1777438 (S.D.N.Y. May 1, 2014) (Lee Litigation Group PLLC); Yuzary v. HSBC Bank USA, N.A., 12 Civ. 3693 (PGG),

2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) (Fitapelli & Schaffer, LLP, Lee Litigation Group PLLC, Outten & Golden LLP and Shavitz Law Group, P.A.).

Based on the firms' performance before me in this and other cases and their work in other cases in this District, I have no question that they will prosecute the interests of the class vigorously.

D.  Adequacy of the Notice

Plaintiffs' counsel seeks approval of two proposed notices -- the Proposed Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Class Notice") (Swartz Decl., Ex. B) and the Proposed Notice of Proposed Settlement of Collective Action and Fairness Hearing ("Collective Notice") (Swartz Decl., Ex. C) -- and contends that they satisfy the Rule 23(c)(2)(B) requirements (Pls. Mem. at 26-27).  Plaintiffs' counsel seeks an order directing distribution of both the Class Notice and Collective Notice (Pls. Mem. 26-27).

1.  Class Notice

Fed.R.Civ.P. 23(c)(2)(B) provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including

26

individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

I have carefully reviewed the Class Notice submitted by plaintiffs (see Swartz Decl., Ex. B) and find the following errors:  (1) the initial instructions for excluding oneself from the settlement incorrectly direct notice recipients to Sections 11-14 instead of Sections 12-14;[5] (2) the notice incorrectly states that "payments of $10,000 to each of two of the Representative Plaintiffs and one of the Early Opt-in Plaintiffs, and payments of $7,500 each to one of the Representative Plaintiffs and five of the Early Opt-in Plaintiffs" will be made instead of "payments of $10,000 to each of three of the

---

[5]This error occurs in the last sentence of the middle row, labeled "Exclude Yourself," of the table on page 2.

Representative Plaintiffs and payments of $7,500 each to one of
the Representative Plaintiffs and five of the Early Opt-in
Plaintiffs" will be made,[6] (3) the notice incorrectly states that
the fairness hearing will take place at "40 Foley Square, New
York, New York, in Courtroom __" instead of "500 Pearl Street,
New York, New York, in Courtroom 18A,"[7] (4) the notice fails to
explain to recipients their rights as members of the FLSA
Collective and (5) the notice does not provide sufficient
information to enable the class members to assess their
alternatives to settlement.

The parties have agreed to send members of the New York
Class and the California Class a "Notice of Settlement of Class
and Collective Action Lawsuit and Fairness Hearing" (Proposed
Settlement Agreement § 2.4(B)); however, the Class Notice does
not explain that the class members are also members of the FLSA
Collective and that by choosing not to opt out of the class and
signing the settlement checks they will eventually receive, they
are also opting in to the FLSA Collective (see Proposed
Settlement Agreement §§ 2.5(E), 2.10).  The Class Notice,
however, does explain that by depositing a settlement check,

---

[6]This error occurs in the last sentence of Section 16 on
page 6.

[7]This error occurs in the first sentence of Section 19 on
page 7.

class members release any claims under the FLSA (Swartz Decl.,
Ex. B § 11).  In addition, although the Class Notice informs each
class member of the total amount he or she will recover (see
Swartz Decl., Ex. B § 8), it does not explain how damages would
be calculated should the class member choose to litigate his or
her individual claims and prevail.  A description of how damages
would be calculated at trial would better inform the class
members of whether their individual settlement awards were
reasonable and of their options should they opt out of the
settlement and continue to litigate.  See Wal-Mart Stores, Inc.
v. Visa U.S.A., Inc., supra, 396 F.3d at 114 ("[T]he settlement
notice must fairly apprise the prospective members of the class
of the terms of the proposed settlement and of the options that
are open to them in connection with the proceedings."  (internal
quotation marks and citation omitted)); accord Arbuthnot v.
Pierson, 607 F. App'x 73, 73-74 (2d Cir. 2015) (summary order).

          Thus, the following revisions are needed before I can
approve the Class Notice and order its distribution:  (1) the
title of the notice should be revised to conform to that agreed
upon by the parties, reflecting the settlement of both the class
and collective actions (see Proposed Settlement Agreement
§§ 1.21, 2.3(A), 2.4(B)); (2) the table on page 2 of the Class
Notice should be revised to explain not only how to exclude

oneself from the class action but also how to include oneself in the collective action, (3) Section 3 on page 3 of the Class Notice should also explain why this is a collective action and (4) plaintiffs' counsel should include a section explaining and providing an example of how damages would be calculated for each sub-class should a class member choose to litigate his or her claims individually and prevail on liability.  Plaintiffs' counsel should conform the remainder of the Class Notice to reflect that the recipients of that notice are both class and collective members.  The revised Class Notice should be submitted for approval within fourteen (14) days of this Order.

### 2.   Collective Notice

Plaintiffs' counsel also seeks approval of the Collective Notice and an Order directing the distribution of the Collective Notice to the members of the FLSA Collective who are not also members of the New York Class or the California class (Pls. Mem. at 26-27; see also Proposed Settlement Agreement § 2.4(C)).  The FLSA Collective includes all individuals who were employed in the Covered Positions for at least 15 days during the period from December 12, 2010 through January 13, 2014 (Proposed Settlement Agreement § 1.16).

"Orders authorizing notice are often referred to as orders 'certifying' a collective action, even though the FLSA does not contain a certification requirement."  Damassia v. Duane Reade, Inc., 04 Civ. 8819 (GEL), 2006 WL 2853971 at *2 (S.D.N.Y. Oct. 5, 2006) (Lynch, then D.J., now Cir. J.); accord Mok v. 21 Mott St. Rest. Corp., 14 Civ. 8081 (PKC), 2015 WL 3939230 at *1 (S.D.N.Y. June 26, 2015) (Castel, D.J.); Garcia v. Spectrum of Creations Inc., --- F. Supp. 3d ---, ---, 14 Civ. 5298 (AJN)(GWG), 2015 WL 2078222 at *4 (S.D.N.Y. May 4, 2015) (Gorenstein, M.J.).  To determine whether to exercise the discretion to facilitate notice to potential plaintiffs, courts in this Circuit typically apply a two step method.  Myers v. Hertz Corp., supra, 624 F.3d at 554-55.  The first step, often referred to as certifying the collective,

> involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred. . . . At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.

Myers v. Hertz Corp., supra, 624 F.3d at 555.

"[T]o warrant certification as a collective action under § 216(b) of the FLSA, the plaintiff must make at least 'a modest factual showing sufficient to demonstrate that [he] and

potential plaintiffs together were victims of a common policy or plan that violated the law.'" Barfield v. N.Y.C. Health & Hosps. Corp., 05 Civ. 6319 (JSR), 2005 WL 3098730 at *1 (S.D.N.Y. Nov. 18, 2005) (Rakoff, D.J.), quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, then D.J., now S. Ct. J.); see also Damassia v. Duane Reade, Inc., supra, 2006 WL 2853971 at *5 ("As emphasized above, the question at this early stage is only whether, applying a 'lenient' standard, the court is satisfied that plaintiffs, through their allegations, affidavits and other evidence, have met their 'minimal' burden of demonstrating entitlement to a 'preliminary' determination that they are similarly, even if not identically, situated with respect to their FLSA claims.").  Plaintiffs' counsel claims that the approximately eighty FLSA collective members who were not employed in New York or California were misclassified and denied overtime compensation pursuant to the same policy as members of the New York Class and the California Class (Pls. Mem. at 2, 5). Because the standard for conditional certification as an FLSA collective is less stringent than the standard for certification of a class action pursuant to Rule 23, see Jackson v. Bloomberg, L.P., supra, 298 F.R.D. at 158-59; Avila v. Northport Car Wash, Inc., 774 F. Supp. 2d 450, 454 (E.D.N.Y. 2011); Hoffman v. Sbarro, Inc., supra, 982 F. Supp. at 263, the discussion in

32

Section III(B), above, is sufficient to demonstrate that
conditional certification of the FLSA collective is also
warranted.

I have carefully reviewed the Collective Notice
submitted by plaintiffs (see Swartz Decl., Ex. C) and but for the
following errors, it is sufficient to provide notice to potential
plaintiffs in the collective action who are not also members of
the New York Class or California Class:  (1) the notice refers to
"Paragraph 16,"[8] "Paragraph 8"[9] and "Paragraph 14"[10] instead of
more accurate references to "Section 16," "Section 8" and
"Section 14" and (2) the notice incorrectly states that "payments
of $10,000 to each of two of the Representative Plaintiffs and
one of the Early Opt-in Plaintiffs, and payments of $7,500 each
to one of the Representative Plaintiffs and five of the Early
Opt-in Plaintiffs" will be made instead of "payments of $10,000
to each of three of the Representative Plaintiffs and payments of

---

[8]This error occurs in the last sentence of Section 8 on page
4.

[9]This error occurs in the first sentence of Section 9 on
page 4.

[10]This error occurs in the first sentence of Section 10 on
page 4.

$7,500 each to one of the Representative Plaintiffs and five of the Early Opt-in Plaintiffs" will be made.[11]

IV.   Conclusion

Accordingly, for all the foregoing reasons, it is hereby ORDERED that:

1.   For settlement purposes, I conditionally certify the New York Class consisting of all individuals who were employed for at least fifteen days in Covered Positions in the State of New York from December 12, 2007 through January 31, 2014 and the California Class consisting of all individuals who were employed for at least fifteen days in Covered Positions in the State of California from December 12, 2009 through January 31, 2014;

2.   For settlement purposes, I certify a collective consisting of all individuals who were employed in the Covered Positions for at least 15 days during the period from December 12, 2010 through January 13, 2014;

---

[11]This error occurs in the last sentence of Section 13 on page 5.

3.   The parties' proposed settlement is preliminarily approved;

4.   For purposes of the settlement, I approve Outten & Golden LLP, Fitapelli & Schaffer, LLP, Lee Litigation Group PLLC and Shavitz Law Group, P.A. as Class Counsel for the FLSA collective, the New York Class and the California Class;

5.   Within fourteen (14) days after entry of this Order, plaintiffs' counsel shall submit a revised Class Notice correcting the deficiencies identified above. Upon receipt of the revised notice, I shall reconsider plaintiffs' counsel's request for approval of the Class Notice;

6.   Except for the corrections noted above, I find that the Collective Notice fully complies with the requirements of federal law;

7.   Plaintiffs' counsel proposes to disseminate the Class Notice to all members of the New York Class and California Class by first class mail, in accordance with Section 2.4(B) of the settlement agreement and to disseminate the Collective Notice to all members of the FLSA collective who are not members of the New York Class or California Class by first class mail, in

accordance with Section 2.4(C). I find that this method of disseminating the notices to all class and collective members, subject to the approval of the revised Class Notice, is the best method practicable under the circumstances and meets the requirements of Fed.R.Civ.P. 23;

8. Within ten (10) business days after an Order approving the Class Notice, in accordance with Section 2.4(A) of the settlement agreement, defendants will provide the information described in Section 2.4(A) of the settlement agreement to the Claims Administrator counsel have agreed upon;

9. Within twenty (20) business days after an Order approving the Class Notice, the Claims Administrator shall mail the Class Notice and the Collective Notice in accordance with Sections 2.4(B) and (C) of the settlement agreement, and the Claims Administrator shall take reasonable steps to re-mail any undelivered notices in accordance with Section 2.4(D) of the settlement agreement.

10. Each class member shall have thirty (30) days from the mailing of the notices, which shall be extended in accordance with Section 2.5(B) of the

36

settlement agreement, to object to the settlement or to exclude him or herself from the settlement pursuant to Sections 2.5(A) and 2.6(A)-(B) of the settlement agreement.

11.  I shall conduct a fairness hearing on December 14, 2015 at 10:00 a.m. to address:  (a) whether the proposed settlement stipulation should be finally approved as fair, reasonable and adequate as to the class members; (b) class counsel's application for attorneys' fees and costs and (c) plaintiffs' application for service awards.

Dated:  New York, New York
        September 11, 2015

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Deirdre A. Aaron, Esq.
Justin M. Swartz, Esq.
Outten & Golden, LLP
29th Floor
3 Park Avenue
New York, New York   10016

37

Brian S. Schaffer, Esq.
Frank J. Mazzaferro, Esq.
Fitapelli & Schaffer, LLP
12th Floor
475 Park Avenue South
New York, New York  10016

Gregg I. Shavitz, Esq.
Susan H. Stern, Esq.
Shavitz Law Group, P.A.
Suite 404
1515 S. Federal Highway
Boca Raton, Florida  33432

Allan S. Bloom, Esq.
Rachel Santoro, Esq.
Proskauer Rose LLP
11 Times Square
New York, New York  10036