UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

STEVEN LONG, DYLAN RANDALL,        :
ERIC VAUGHN, and CHARLES YOO,
on behalf of themselves and        :
others similarly situated,              14 Civ. 6233 (HBP)
                                   :
              Plaintiffs,               OPINION
                                   :    AND ORDER
    -against-
                                   :
HSBC USA INC. and HSBC BANK,
USA, N.A.,                         :

              Defendants.          :

----------------------------------X


          PITMAN, United States Magistrate Judge:


I.  Introduction


          Plaintiffs bring this action for unpaid wages and

overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§§ 201 et seq., the New York Labor Law §§ 650 et seq. and various

California labor laws, including the Industrial Welfare Commis-

sion's California Wage Order 4-2001, codified as Cal. Code Regs.

tit. 8, § 11040, California Labor Code §§ 201-03, 218.5, 226,

226.7, 510, 512, 1174, 1174.5 and 1194 and the California Busi-

ness and Professions Code §§ 17200 et seq.  The parties have

consented to my exercising plenary jurisdiction pursuant to 18

U.S.C. § 636(c) (Docket Item ("D.I.") 6).

The parties have agreed to settle the action and plaintiffs have moved for certification of the settlement class and final approval of the class action and FLSA settlements (D.I. 37), approval of the service awards (D.I. 39) and approval of the counsel's claim for fees and expenses.  By a separate Order of even date, I am granting the first two of these motions.  In this Opinion and Order, I address plaintiffs' remaining motion for approval of attorneys' fees and costs.  For the reasons set forth below, the motion is granted in part and denied in part.

II.  Factual and
     Procedural Background

Plaintiffs worked as premium mortgage consultants and retail mortgage consultants, or in substantially similar positions, for HSBC USA Inc. and HSBC Bank USA, N.A. at HSBC branches nationwide (the "Covered Positions"); defendants classified plaintiffs as being exempt from the FLSA's overtime pay requirements during at least one of the applicable limitations periods (First Amended Complaint, (D.I. 7) & Declaration of Justin M. Swartz in Supp. Of Plaintiffs' Motion for Final Approval of the Settlement Agreement, dated Dec. 22, 2015 (D.I. 43) ("Swartz Decl."), Ex. A (Joint Stipulation of Settlement and Release) ("Settlement Agreement"), §§ 1.8, 1.10).  The settlement covers

three overlapping groups of approximately 500 class members:  (1) an FLSA collective consisting of all individuals who were employed in the Covered Positions for at least fifteen days between December 12, 2010 and January 31, 2014, (2) a New York Class of all individuals who were employed in the Covered Positions for at least fifteen days in the State of New York between December 12, 2007 and January 31, 2014 and (3) a California Class of all individuals who were employed in the Covered Positions for at least fifteen days in the State of California between December 12, 2009 and January 31, 2014 (Settlement Agreement §§ 1.16, 1.17).

The parties agreed to the settlement as a result of pre-litigation negotiations, including a mediation session at JAMS in New York (Swartz Decl. ¶¶ 36-41).  The settlement provides that defendants will pay a total of $6,982,000.00 to cover payments to participating class members, service awards, attorneys' fees and costs, administrative fees and all other expenses (Settlement Agreement § 3.1).  The settlement agreement also provides that Class Counsel will seek approval of an award of not more than one-third of the settlement amount ($2,327,333.33) as fees, plus costs and expenses (Settlement Agreement §§ 3.2(A)).

Each class member who does not exclude him or herself from the settlement will receive a payment based on the number of weeks worked during the relevant time periods, as reflected in defendants' business records (Settlement Agreement §§ 2.10(A), 3.4(C)).  Net of the proposed attorneys' fees and costs, service awards and claims administration fees, class members would each receive an average net settlement payment of approximately $9,200.00 (Swartz Decl. ¶ 54).

By order dated September 11, 2015, I preliminarily approved the settlement on behalf of the class set forth therein, conditionally certified the settlement class, appointed Outten & Golden LLP ("O&G"), Shavitz Law Group, P.A. ("SLG"), Fitapelli & Schaffer, LLP ("F&S") and Lee Litigation Group PLLC ("LLG") as Class Counsel (hereafter "Counsel") and authorized notice to all class members (Order, dated Sept. 11, 2015 (D.I. 29)).

I held a fairness hearing on January 6, 2016 (Transcript of Hearing, dated Jan. 6, 2016 (D.I. 48) ("Fairness Hearing Tr."). No class member appeared at the hearing or objected to the terms of the settlement (Fairness Hearing Tr. at 2; Swartz Decl. ¶ 62).[1]  Defendants take no position with respect

---

[1]After the hearing, one class member filed a letter with the Court indicating that he wished to opt-out of the settlement class, but that class member later withdrew that request (D.I.
(continued...)

4

to the pending motions (Fairness Hearing Tr. at 30).  At the hearing, I informed the parties that I would approve the settlement, but that I reserved decision on the issue of the amount of attorneys' fees to be awarded (Fairness Hearing Tr. at 31-32).

III.  <u>Analysis</u>

    A.   Standards Governing
       the Award of Fees and
       <u>Costs to Class Counsel</u>

The FLSA and the New York and California labor laws each provide that a successful plaintiff can recover his or her reasonable attorneys' fees and costs.  <u>See</u> 29 U.S.C. § 216(b); N.Y. Labor L. §§ 198, 663(4); California Labor Code § 1194.  Even when the plaintiff agrees to a settlement, counsel is still entitled to fees under the law.  <u>Kahlil v. Original Old Homestead Rest., Inc.</u>, 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009) (Holwell, D.J.).

An application for attorneys' fees must be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done." <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711

---

[1](...continued)
52-53).

F.2d 1136, 1148 (2d Cir. 1983).  "Carey establishes what is essentially a hard-and-fast rule 'from which attorneys may deviate only in the rarest of cases' . . . ."  Scott v. City of New York, 643 F.3d 56, 57 (2d Cir. 2011), quoting Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010).  Not even a District Judge's personal observations of an attorney's work can substitute for the required contemporaneous time records.  Scott v. City of New York, supra, 643 F.3d at 58.  The burden is on the attorney requesting fees to provide sufficient evidence, including production of contemporaneous time records or sufficient explanation for their absence.  Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986), citing New York State Ass'n for Retarded Children, Inc. v. Carey, supra, 711 F.2d at 1148, 1154.

In addition, in order for me to determine the reasonableness of the fees sought, counsel must provide sufficient information regarding the qualifications of the attorneys and the paralegals who worked on the matter.  See, e.g., Yea Kim v. 167 Nail Plaza, Inc., 05 Civ. 8560 (GBD)(GWG), 2009 WL 77876 at *2, *9 (S.D.N.Y. Jan. 12, 2009) (Daniels, D.J.) (reducing attorney and paralegal rates where no information was provided to the court regarding their backgrounds); Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005) (Robinson, D.J.) (reducing

paralegal rate where limited information was provided regarding paralegals' qualifications and the nature of their work).

    B.  Counsel's Request
        for One-Third of
        the Settlement Fund

    Counsel seek one-third of the $6,982,000.00 settlement fund, or $2,327,333.33, as attorneys' fees and $19,136.00 in costs.  Counsel have submitted time records reflecting approximately 260 hours of work; at Counsel's claimed regular rate, the charge for this work would be $266,872.00 (Swartz Decl. ¶¶ 49, 65, 68-70, 73).[2]  Counsel contend that fees should be calculated using the percentage method rather than the lodestar method and seek to distinguish my recent decisions, which have rejected the percentage-of-the-fund method (see Pls. Mem. of Law in Supp. of

---

    [2]See Swartz Decl. Ex. C (attaching O&G time summaries), Ex. D (attaching O&G time records); Declaration of Gregg I. Shavitz, dated Dec. 15, 2015 (D.I. 45) ("Shavitz Decl."), Ex. B (attaching SLG time records); Declaration of Brian S. Schaffer, dated Dec. 22, 2015 (D.I. 44) ("Schaffer Decl."), Ex. A (attaching F&S time records); Declaration of C.K. Lee, dated Dec. 21, 2015 (D.I. 46) ("Lee Decl."), Ex. A (attaching LLG time records).  After the fairness hearing, counsel filed a letter stating that their time charges had increased to $312,761.00 (see Letter from Justin M. Swartz, dated March 11, 2016 (D.I. 50) ("Swartz March 11, 2016 Letter")).  Counsel's letter was not accompanied by contemporaneous time records reflecting any additional work and, therefore, I do not consider this figure in the calculation of the lodestar. See Scott v. City of New York, supra, 643 F.3d at 57; New York State Ass'n for Retarded Children, Inc. v. Carey, supra, 711 F.2d at 1148.

Mot. for Fees, dated Dec. 22, 2015 (D.I. 42) ("Pls. Fees Mem.")
at 2-28).

An attorney's application for a fee award is addressed
to the discretion of the court.  Black v. Nunwood, Inc., 13 Civ.
7207 (GHW), 2015 WL 1958917 at *4 (S.D.N.Y. Apr. 30, 2015)
(Woods, D.J.) (collecting cases).  In Goldberger v. Integrated
Res., Inc., supra, 209 F.3d at 52-53, the Second Circuit noted
that, in common fund cases, "fixing a reasonable fee becomes even
more difficult because the adversary system is typically diluted
-- indeed, suspended -- during fee proceedings" since the defen-
dants "have little interest in how [the fund] is distributed and
thus no incentive to oppose the fee" and "class members -- the
intended beneficiaries of the suit -- rarely object."  Thus, in
common fund cases, the district court must assess a fee award
"based on scrutiny of the unique circumstances of each case, and
a jealous regard to the rights of those who are interested in the
fund."  Goldberger v. Integrated Res., Inc., supra, 209 F.3d at
53 (internal quotation marks and citation omitted).

"Although [the Second Circuit] ha[s] acknowledged that
'the trend in this Circuit is toward [awarding fees on] the
percentage[-of-the-fund] method,' it remains the law in this
Circuit that courts 'may award attorneys' fees in common fund
cases under either the "lodestar" method or the "percentage of

8

the fund" method.'"  McDaniel v. Cty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (collecting cases), quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., supra, 396 F.3d at 121.  Under the percentage-of-the-fund method, the attorneys are awarded a reasonable percentage of the common fund.  McDaniel v. Cty. of Schenectady, supra, 595 F.3d at 418.  Under the lodestar method, the fee award is calculated as the product of a reasonable hourly rate and the reasonable number of hours required by the case, which yields a presumptively reasonable fee.  Perez v. AC Roose-velt Food Corp., 744 F.3d 39, 44 (2d Cir. 2013).  While "there is a 'strong presumption' that the lodestar figure is reasonable," it may be adjusted by a multiplier when the lodestar product "does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010); see also Perez v. AC Roosevelt Food Corp., 744 F.3d 39, 43 (2d Cir. 2013) ("Both [the Second Circuit] and the Supreme Court have held that the lodestar -- the product of a reasonable hourly rate and the reasonable number of hours required by the case -- creates a presumptively reasonable fee."), quoting Millea v. Metro-N. R. Co., 658 F.3d 154, 166-67 (2d Cir. 2011) (internal quotation marks omitted).

          "[N]either the lodestar nor the percentage-of-fund approach to awarding attorneys' fees in common fund cases is

without problems." <u>McDaniel v. Cty. of Schenectady</u>, <u>supra</u>, 595 F.3d at 418-19 (describing the problems with and benefits of both methods).  Ultimately, common fund fee awards must be "made with <u>moderation</u>" and the court must "act as a fiduciary who must serve as a guardian of the rights of absent class members." <u>Goldberger v. Integrated Res., Inc.</u>, <u>supra</u>, 209 F.3d at 52 (internal quotation marks and citations omitted; emphasis added in original). Accordingly, in this Circuit, both the lodestar and the percentage-of-the-fund methods are

> guided by the traditional criteria in determining a reasonable common fund fee, including:  (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

<u>Goldberger v. Integrated Res., Inc.</u>, <u>supra</u>, 209 F.3d at 50 (internal quotation marks and citation omitted, alteration in original).  Where the percentage-of-the-fund method is used, the Second Circuit, "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." <u>Goldberger v. Integrated Res., Inc.</u>, <u>supra</u>, 209 F.3d at 50; <u>see also</u> <u>Cassese v. Williams</u>, 503 F. App'x 55, 59 (2d Cir. 2012) (summary order); <u>Masters v. Wilhelmina Model Agency, Inc.</u>, 473 F.3d 423, 436 (2d Cir. 2007).

10

I have previously addressed the recent case law in this Circuit regarding fee requests in FLSA cases seeking one-third of a common fund.  See Mills v. Capital One, N.A., 14 Civ. 1937 (HBP), 2015 WL 5730008 at *1 (S.D.N.Y. Sept. 30, 2015); Lizondro-Garcia v. Kefi LLC, 12 Civ. 1906 (HBP), 2015 WL 4006896 (S.D.N.Y. July 1, 2015).  In those decisions, I agreed with the decision of the Honorable William H. Pauley, III, United States District Judge, in Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014) (Pauley, D.J.) that there are reasons to be "wary" of the percentage-of-the-fund method in FLSA cases and chose to analyze the reasonableness of class counsels' fee application pursuant to the lodestar method and the Goldberger criteria.  Mills v. Capital One, N.A., supra, 2015 WL 5730008 at *9-*10; Lizondro-Garcia v. Kefi LLC, supra, 2015 WL 4006896 at *4; accord Hall v. ProSource Tech., LLC, 14-CV-2502 (SIL), 2016 WL 1555128 at *11 (E.D.N.Y. Apr. 11, 2016); Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 25 (S.D.N.Y. 2015) (Dolinger, M.J.); Flores v. Mamma Lombardi's, Inc., 104 F. Supp. 3d 290, 305-09 (E.D.N.Y. 2015); Ortiz v. Chop't Creative Salad Co., 13 Civ. 2541 (KNF), 2015 WL 778072 at *19-*20 (S.D.N.Y. Jan. 16, 2015) (Fox, M.J.).

As previously noted, counsel seek to distinguish two of my recent decisions addressing attorney's fee applications by

11

O&G:  _Ballinger v. Advance Magazine Publishers, Inc._, 13 Civ.
4036 (HBP), slip. op. (S.D.N.Y. Aug. 11, 2015) (attached as Ex. N
to Swartz Decl.) ("_Ballinger_") and _Mills v. Capital One, N.A._,
_supra_, 2015 WL 5730008 ("_Mills_").[3]  The issue in _Ballinger_ was
whether student interns who worked at a number of national
magazines were entitled to the protection of the FLSA and the New
York State Labor Law.  See _Ballinger v. Advance Magazine Publish-_
_ers, Inc._, 13 Civ. 4036 (HBP), Preliminary Approval Order, at 5-6
(S.D.N.Y. Dec. 29, 2014).  Like this action, _Ballinger_ was
brought as a collective action with respect to the FLSA claims
and as a class action with respect to parallel state law claims.
See _Ballinger v. Advance Magazine Publishers, Inc._, _supra_,
Preliminary Approval Order, at 1-3.  _Ballinger_ was commenced
before the Court of Appeals' decision in _Glatt v. Fox Searchlight_
_Pictures, Inc._, 791 F.3d 376 (2d Cir. 2015), _opinion_ _amended_ _and_
_superseded_, 811 F.3d 528 (2d Cir. 2016), and the outcome at the
time the action was commenced was uncertain.  _Ballinger v._
_Advance Magazine Publishers, Inc._, _supra_, Preliminary Approval
Order, at 5-6.   O&G successfully negotiated a class-wide settle-
ment of $5,850,000.00.   See _Ballinger v. Advance Magazine Pub-_

---

[3]All of the information set forth herein concerning these
cases are disclosed in the publicly available filings in those
matters.

lishers, Inc., supra, slip. op. at 1.  O&G sought and received a
fee award of $650,000.00 or approximately 11.11% of the settle-
ment fund.  Ballinger v. Advance Magazine Publishers, Inc.,
supra, slip. op. at 2.  Counsel's lodestar in Ballinger was
approximately $368,000.00 for 920 hours of attorney time and the
fee award was approximately 1.76 times the lodestar.  See Mills
v. Capital One, N.A., supra, 2015 WL 5730008 at *16.

Mills involved claims by assistant branch managers at a
national bank for unpaid overtime wages in violation of the FLSA
and the labor laws of three states.  Mills v. Capital One, N.A.,
supra, 2015 WL 5730008 at *1.  Like this case, the principal
issue in Mills was whether plaintiffs were improperly classified
by the defendant as exempt from federal and state overtime laws.
Mills v. Capital One, N.A., supra, 2015 WL 5730008 at *1, *5.
Like this case, this issue was disputed and counsel took on
significant risk in pursuing the litigation in the face of
unfavorable judicial decisions.  See Mills v. Capital One, N.A.,
supra, 2015 WL 5730008 at *5-*6, *14.  Moreover, proceeding
through trial and discovery would have required fact-intensive
litigation involving the work done by branch managers at branches
across the country who were subject to different state labor
laws, and would probably have required the creation of sub-
classes to address the state-law claims.  Mills v. Capital One,

13

N.A., supra, 2015 WL 5730008 at *6.  Also, like this case,
plaintiffs' counsel arrived at a fair settlement with defendant
in pre-litigation negotiations.  Mills v. Capital One, N.A.,
supra, 2015 WL 5730008 at *1-*2, *4-*7.  The settlement in Mills
was $3,000,000.00 and constituted 49% of the class's estimated
unpaid wages over the limitations period.  Mills v. Capital One,
N.A., supra, 2015 WL 5730008 at *1, *6.  I awarded counsel
$500,000.00 in fees, which represented 16.67% of the fund and was
2.21 times their adjusted lodestar.  Mills v. Capital One, N.A.,
supra, 2015 WL 5730008 at *15, *17.  In coming to my determina-
tion in Mills, I noted that plaintiffs' counsel was able to
settle Mills in approximately 60% of the hours it took to settle
Ballinger, and, accordingly, in the absence of any basis to
distinguish Ballinger, I set the multiplier in Mills to yield a
product substantially less than the fee awarded in Ballinger.
See Mills v. Capital One, N.A., supra, 2015 WL 5730008 at *16-
*17.

        Counsel advance several arguments in an attempt to
distinguish Mills and Ballinger and demonstrate that an award of
one-third of the settlement fund is warranted in this case.
However, as discussed below, counsel's arguments are unconvinc-
ing.

Counsel first assert that loan officer cases are particularly risky; they cite decisions in such cases in which courts decertified a collective after substantial litigation, courts denied conditional or class certification, and cases in which plaintiffs lost the exemption issue on the merits (Pl. Fees Mem. at 2-4). Counsel state that they took this case knowing that "there was a significant likelihood that they would recover nothing but pressed forward nonetheless. [They go on to state that if they had been] told in advance that they could only recover slightly more than they spent -- even if they achieved a favorable outcome for the class -- they would not have taken the case" (Pl. Fees Mem. at 3-4, <u>citing</u> Swartz Decl. ¶ 78). Counsel also assert that applying the lodestar or a low percentage-of-the-fund will "'potentially discourage able lawyers from taking such cases'" (Pl. Fees Mem. at 4 (citation omitted)).

Counsel are correct that the risk they took in taking this case is relevant to the fees determination, but counsel overlooks the fact that both <u>Ballinger</u> and <u>Mills</u> involved the same types of risks -- indeed, counsel made similar arguments in support of the fee applications in those cases. In all three of these cases, the defendants maintained that plaintiffs were exempt from federal and state overtime laws. As counsel noted in their motion for approval of fees in <u>Ballinger</u>, there was sub-

15

stantial risk involved in the unpaid intern class actions because when <u>Ballinger</u> was settled -- prior to the Second Circuit's decision in <u>Glatt v. Fox Searchlight Pictures, Inc.</u>, <u>supra</u>, 811 F.3d 528 -- the law was unsettled on the standards to be applied to interns claiming unpaid wages and overtime.  See <u>Ballinger v. Advance Magazine Publishers, Inc.</u>, 13 Civ. 4036, Pls. Mem. of Law in Supp. of Mot. for Fees, dated June 24, 2015 (S.D.N.Y.), at 7-8.  In <u>Mills</u>, counsel cited similar litigation risks and also noted that plaintiffs' attorneys took the case in the face of several decisions in federal courts that were contrary to plain-tiffs' position in that case.  See <u>Mills v. Capital One Bank</u>, 14 Civ. 1937, Pls. Mem. of Law in Supp. of Mot. for Fees, dated Oct. 31, 2014 (S.D.N.Y.), at 11-13.  Thus, I shall take into account the risk of the litigation in my fee determination, but it is not a basis to find that an award of one-third of the fund is pre-sumptively warranted in this case.

Counsel also argue that the legal issue in <u>Ballinger</u> -- an unpaid intern's status as an employee -- is less complex than proving that a loan officer is not an outside sales person, and that this fact also warrants the higher award of one-third of the fund for this settlement (Pl. Fees Mem. at 5).  Counsel argue that the intern mis-classification cases are less complex because the analysis in those cases "does not require a determination of

the intern's primary duty or an analysis of where the plaintiff performed his duties on a day-to-day basis" (Pl. Fees Mem. at 5). Counsel do not otherwise elaborate on this argument and it is not convincing.  In Glatt, the Court of Appeals held that the primary beneficiary test should be used to determine whether an unpaid intern is an employee under the labor laws and set forth seven non-exhaustive factors for courts to consider to make this determination.  See Glatt v. Fox Searchlight Pictures, Inc., supra, 811 F.3d at 536-37.  For example, one factor is the "extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern," Glatt v. Fox Searchlight Pictures, Inc., supra, 811 F.3d at 537.  This issue is fact intensive and requires an analysis of each intern's day-to-day duties.  Thus, Counsel's argument that the intern mis-classification cases are less complex does not warrant a departure from the lodestar analysis here.

Counsel also argue that the settlement in this case is more favorable to plaintiffs in terms of the amount recovered and the manner of its distribution (Pl. Fees Mem. at 4-5).  In Ballinger, any amount not claimed by class members would have reverted to defendants (Pl. Fees Mem. at 4, citing Settlement Agreement in Ballinger, § 13(e),(o) (attached as Ex. O to Swartz

17

Decl.)).[4]  In this case, almost all of the settlement fund will
be distributed to plaintiffs even if they do not submit claim
forms.  All class members who do not opt out will receive a
settlement check (Settlement Agreement § 2.10(A)).  Further, if
settlement checks are not cashed, the portion of the check
attributable to the class action claims will be redistributed to
the class and only the portions attributable to the FLSA claims
will be returned to defendants (Settlement Agreement §
3.1(D),(F)).  Counsel also point out that the gross settlement
amount in this case represents 68% of the class's lost wages --
substantially more than the 49% value in Mills (Pl. Fees Mem. at
4-5; Swartz Decl. ¶ 53).[5]  Further, Counsel point out that in

---

[4]Counsel do not address this issue with respect to Mills;
however, I note that in that settlement agreement, settlement
checks that were not cashed would revert to the defendant 180
days after the check's issuance.  Mills v. Capital One, N.A.,
supra, 2015 WL 5730008 at *2.

[5]Counsel's use of the term "lost wages" in this case and in
Mills suggests that these figures exclude liquidated damages
(Swartz Decl. ¶ 53 ("By Class Counsel's estimation, the
$6,982,000 settlement represents approximately 68% of the class's
lost wages, assuming that Class Members worked an average of 40
overtime weeks per year and 7.5 overtime hours per week, if
Defendants were to prevail on the fluctuating workweek argu-
ment"); Mills v. Capital One Bank, 14 Civ. 1937, Declaration of
Justin M. Swartz in Supp. of Mot. for Fees, dated Oct. 31, 2014
(S.D.N.Y.) ¶ 63 ("By Class Counsel's estimation, the $3,000,000
settlement represents approximately 49% of the class's lost wages
over the liability period, assuming that Class Members worked
overtime in 85% of total workweeks, for an average of 5 overtime
hours per week, if Capital One were to prevail on a fluctuating
(continued...)

Ballinger, class counsel agreed to a fee of less than 30% of the settlement fund to provide class members with a more meaningful recovery -- increasing per person recovery from $520.00 to a range of $700.00 to $1,900.00 (Pl. Fees Mem. at 5).[6]  Here, Counsel argue, the average $9,200.00 per person net recovery in this case is "very good compensation for the claims being re-leased, and highlights Class Counsel's successful efforts" (Pl. Fees Mem. at 5).

Counsel are correct that their success in negotiating more favorable terms in this settlement justifies higher compen-sation than in Mills and Ballinger.  However, these elements alone do not demonstrate that they are entitled to one-third of the settlement fund.  Although the result is commendable and

---

[5](...continued)
workweek argument")).  Counsel do not provide an estimate of the percentage recovery they achieved in Ballinger, nor is one immediately ascertainable from the papers filed in that case.

[6]Counsel also believed that the reduction in their fee was in the public interest because if the media reported the higher per person recovery "other interns would know that they have those rights and they can get paid as well" (Fairness Hearing Tr. at 22).  On the other hand, counsel argue that, because plain-tiffs' base salaries here are higher than the average FLSA plaintiff, there is less of a public interest in reducing coun-sel's fee to enhance the class members' benefit (Pl. Fees Mem. at 5-6; Fairness Hearing Tr. at 21 ("we do take those cases knowing that we're not going to recover very much money for ourselves but there are other cases on behalf of highly paid loan officers who we believe should have been paid overtime but certainly don't have the public interest nature of the interns in the [Ballinger] case")).

reflective of counsel's expertise, an award of one-third of the settlement fund that would inflate counsel's hourly rate to such an extent is closer to a windfall than a reasonable attorney's fee.  As discussed below, I conclude that class counsel's efforts on behalf of the class in this case should be rewarded through application of a higher multiplier to the lodestar number than that awarded in <u>Mills</u>.

Counsel also correctly point out that courts continue to apply the percentage-of-the-fund method after <u>Fujiwara</u>, but have not cited any decisions that analyzed the merits of awarding one-third of the fund as the presumptively reasonable fee -- particularly where such an award would provide a multiplier above eight.  Indeed, like the cases cited in <u>Fujiwara</u>, most of the cases cited by plaintiffs are signed form orders or summary decisions without any formal analysis (Pl. Fees Mem. at 11-12; Swartz March 11, 2016 Letter).  The cases that are not form orders awarded one-third of the fund where counsel's award reflected a multiplier below the multiplier requested here or at or below counsel's lodestar.  See <u>Pena v. Le Cirque, Inc.</u>, 14 Civ. 7541 (FM), Fairness Hearing, dated Jan. 21, 2016 (S.D.N.Y.) (Maas, M.J.), at 7 (attached as Ex. A to Swartz March 11, 2016 Letter) (approving award of one-third of the fund resulting in multiplier of 4.9 and noting that the percentage award is meant

20

to avoid discouraging able counsel from "bringing these cases by awarding more modest fees or requiring some sort of haircut"); Gaspar v. Personal Touch Moving, Inc., 13 Civ. 8187 (AJN), 2015 WL 7871036 at *2 (S.D.N.Y. Dec. 3, 2015) (Nathan, D.J.) (awarding counsel's fees based on the lodestar without a multiplier and noting that the result was "just under a third of the total recovery"); Behzadi v. Int'l Creative Mgmt. Partners, LLC, 14 Civ. 4382 (LGS), 2015 WL 4210906 at *3 (S.D.N.Y. July 9, 2015) (Schofield, D.J.) (finding that one-third of the fund constituted a fair award compared to awards in similar cases and noting that the award was lower than the lodestar); Amador v. Morgan Stanley & Co., LLC, 11 Civ. 4326 (RJS), Fairness Hearing, dated Dec. 19, 2014 (S.D.N.Y.) (Sullivan, D.J.) (attached as Ex. T to Swartz Decl.) at 16 (finding that an award of one-third of the fund was fair and would effectively grant counsel an hourly rate of under $400 per hour for the hours spent); Ceka v. PBM/CMSI Inc., 12 Civ. 1711 (DAB), 2014 WL 6812127 at *1 (S.D.N.Y. Dec. 2, 2014) (Batts, D.J.) (awarding counsel "$166,666.67, or one-third of the gross settlement of $500,000.00" where the lodestar was $49,610.00).  I do not doubt that the decisions that counsel cite, including the form orders awarding one-third of the fund, were based on a careful consideration of the facts and the law. However, I find Counsel's argument that I should "follow" these

decisions to find that an award of one-third of the fund is "presumptively proper" (Swartz March 11, 2016 Letter at 1) troubling because the decisions themselves do not include the judicial analysis to support Counsel's position generally or in this case in particular.[7]  In the absence of persuasive authority to support Counsel's arguments, I continue to be wary of much of the case law awarding a one-third percentage-of-the-fund in FLSA cases, and I decline to apply the percentage method.

In addition to the arguments discussed above, counsel make the same arguments in favor of the percentage-of-the-fund method that I found unpersuasive in Mills -- namely, that it aligns the interests of class and counsel, it reflects market rates, it rewards lawyers who take on risky contingency fee litigation without assurance of compensation, it promotes early resolution (as opposed to the lodestar which penalizes lawyers for such early resolution) and it preserves judicial resources (see Pl. Fees Mem. at 6-12).  Counsel also points out that there

---

[7]I note that the Court of Appeals recently reversed and remanded an attorneys' fee award from a settlement fund because the Court could not "assess whether [the] fee award is reasonable in the absence of any explanation by the district court."  See In re CRM Holdings, Ltd. Sec. Litig., 634 F. App'x 59, 59-61 (2d Cir. 2016) (summary order) ("[o]n remand, the district court must conduct a thorough analysis of the Goldberger factors, explain how it weighed the factors, and state the grounds on which it relied").

have been no objections to the fees as described in the Settle-
ment Agreement and that this also favors awarding the fees
requested (Pl. Fees Mem. at 13, <u>citing</u> Declaration of Mark
Patton, dated Dec. 21, 2015 (attached as Ex. B to Swartz Decl.),
¶ 8).

      As I explained in my previous decisions, a key concern
in the recent caselaw regarding fee application analysis in FLSA
settlements is the need for robust judicial analysis.  <u>See</u> <u>Mills</u>
<u>v. Capital One, N.A.</u>, <u>supra</u>, 2015 WL 5730008 at *10, <u>citing</u> <u>also</u>
<u>Fujiwara v. Sushi Yasuda Ltd.</u>, <u>supra</u>, 58 F. Supp. 3d at 436
("Approval of class action settlements and fee applications is
precisely where judicial scrutiny, not judicial deference, is
most needed.").  Although counsel raises valid concerns, I
continue to adhere to the position that "in selecting a method
for awarding fees" it is preferable to be guided by "which method
most accurately identifies the proper, reasonable amount of
compensation to the attorneys, not by the incentives purportedly
created or furthered by the approach." <u>Marshall v. Deutsche Post</u>
<u>DHL</u>, No. 13-CV-1471 (RJD)(JO), 2015 WL 5560541 at *6, *7
(E.D.N.Y. Sept. 21, 2015) (noting that most authorities awarding
one-third of the fund derive from proposed orders drafted by
counsel and concluding that "[w]ithout a reliable anchor for
awarding attorneys' fees as a percentage of the recovery, I will

do as other courts have done in FLSA suits and analyze the
reasonableness of class counsels' fee application pursuant to the
lodestar method." (citations omitted)).   I am not ignoring the
considerations raised by Counsel; rather, I conclude that they
are more appropriately addressed in the lodestar analysis.
Therefore, consistent with my obligation to approach fee applica-
tions with "a jealous regard to the rights of those who are
interested in the fund," Goldberger v. Integrated Res., Inc.,
supra, 209 F.3d at 53 (internal quotation marks and citation
omitted), I shall apply the lodestar method here and consider
counsel's arguments in favor of their requested award in deter-
mining the appropriate multiplier.   As explained below, I con-
clude that the lodestar and multiplier analysis yields an award
to Counsel of $713,471.20 or 10.2% of the settlement fund.

    C.   The Lodestar

        Counsel argue that the lodestar and multiplier calcula-
tion also supports their request for a $2,327,333.33 fee (Pl.
Fees Mem. at 28-33).   Counsel claim that both their rates and the
number of hours they expended are reasonable and argue that an
8.7 multiplier is within the range of multipliers regularly
awarded in cases of this nature and is reasonable in light of the
complexity of the litigation, the contingent nature of the case,

counsel's skill, and the additional time they will expend implementing, monitoring and enforcing the settlement.

Although I agree that counsel achieved a very good result here through their skill and knowledge, I do not believe the result is so beneficial to plaintiffs as to warrant the award Counsel seeks.

### 1. Counsel's Hourly Rates

Class counsel spent the following hours[8] on this matter and seek the rates set forth below:

**O&G**

Justin M. Swartz, Esq.
Partner - 18 years experience

67.8 hours @ $750/hour                                    $50,850.00

Jahan C. Sagafi, Esq.
Partner - 15 years experience

2 hours @ $675/hour                                       $1,350.00

---

[8]In support of their application for fees, Counsel submitted computerized compilations of contemporaneous time records describing how they spent the hours for which fees are sought. Such transcriptions of contemporaneous time records satisfy the requirements set forth above. See, e.g., Cruz v. Local Union No. 3 of Int'l Bhd. Of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994); Tri-Star Pictures, Inc. v. Unger, 42 F. Supp. 2d 296, 302-03 (S.D.N.Y. 1999) (Edelstein, D.J.); Lenihan v. City of New York, 640 F. Supp. 822, 824 (S.D.N.Y. 1986) (Conner, D.J.).

<u>Amber C. Trzinski, Esq.</u>
Associate - 7 years experience

3.7 hours @ $400/hour                                    $1,480.00

<u>Sally J. Abrahamson, Esq.</u>
Associate - 7 years experience

5.4 hours @ $400/hour                                    $2,160.00

<u>Deirdre A. Aaron, Esq.</u>
Associate - 6 years experience

193.9 hours @ $360/hour                                 $69,804.00

<u>Jennifer L. Liu, Esq.</u>
Associate - 6 years experience

.6 hours @ $400/hour                                       $240.00

<u>Julia Rabinovich, Esq.</u>
Associate - 4 years experience

2.7 hours @ $295/hour                                      $796.50

<u>Elizabeth V. Stork, Esq.</u>
Associate - 3 years experience

8.4 hours @ $270/hour                                     $2,268.00

<u>Olivia J. Quinto, Esq.</u>
Associate - 3 years experience

9.4 hours @ $270/hour                                     $2,538.00

<u>Jon O. Margolis, Esq.</u>
Contract Attorney - 26 years experience

3 hours @ $600/hour                                       $1,800.00

<u>Marco A. Lopez, Esq.</u>
Contract Attorney - 7 years experience

4.6 hours @ $360/hour                                     $1,656.00

<u>Morgan Marshall-Clark, Esq.</u>
Contract Attorney - 6 years experience

.8 hours @ $270/hour                                    $216.00

**<u>SLG</u>**

<u>Gregg I. Shavitz, Esq.</u>
Partner - 22 years experience

94.9 hours @ $500/hour                             $47,450.00

<u>Susan H. Stern, Esq.</u>
Counsel - 26 years experience

7.4 hours @ $475/hour                               $3,515.00

<u>Christine Duignan, Esq.</u>
Counsel - 25 years experience

7 hours @ $425/hour                                 $2,975.00

<u>Michael J. Palitz, Esq.</u>
Associate - 5 years experience

14 hours @ $325/hour                                $4,550.00

**<u>F&S</u>**

<u>Brian S. Schaffer, Esq.</u>
Partner - 12 years experience

53.9 hours @ $500/hour                             $26,950.00

<u>Joseph A. Fitapelli, Esq.</u>
Partner - 15 years experience

2.6 hours @ $500/hour                               $1,300.00

<u>Frank J. Mazzaferro, Esq.</u>
Associate - 5 years experience

5.3 hours @ $300/hour                               $1,590.00

**LLG**

<u>C.K. Lee, Esq.</u>
Partner - 19 years experience

45.1 hours @ $550/hour                                    $24,805.00

**TOTAL**                                                **$248,293.50**

Counsel have provided the qualifications of each attorney for whom fees are sought (Swartz Decl. ¶¶ 13-24; Shavitz Decl. ¶¶ 4-13; Schaffer. Decl. ¶¶ 1-8; C.K. Lee Decl. ¶¶ 1, 5-8).

Counsel also seek compensation for the following paralegal work:

73.1 hours @ $235/hour (O&G)                             $17,178.50

14 hours @ $100/hour (SLG)                               $1,400.00

**TOTAL**                                                **$18,578.50**

The foregoing work was performed by a total of seven paralegals at O&G and three paralegals at SLG.  Counsel also provided a description of the background and qualifications of each paralegal for whom fees are sought except for 2.6 hours of work at O&G for a "part-time paralegal" listed in the fee application (Swartz Decl. ¶¶ 25-31; Shavitz Decl. ¶¶ 14-16).

The hourly rates used in making a fee award should be "what a reasonable, paying client would be willing to pay." <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of</u>

28

Albany, 522 F.3d 182, 184 (2d Cir. 2007).  This rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); accord Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006).  In determining reasonable hourly rates, a court should first examine the attorneys' experience.  Kahlil v. Original Old Homestead Rest., Inc., supra, 657 F. Supp. 2d at 475.  In determining a reasonable hourly rate, the court should not only consider the rates approved in other cases in the District, but should also consider any evidence offered by the parties.  Farbotko v. Clinton Cty., 433 F.3d 204, 208-09 (2d Cir. 2005).  The court is also free to rely on its own familiarity with prevailing rates in the District.  A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ., 407 F.3d 65, 82 n.16 (2d Cir. 2005); Miele v. New York State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).

Counsel for plaintiffs are experienced in FLSA actions. Counsel's declarations describe the experience and qualifications of each attorney who billed time to the litigation.  These include the attorneys' law school graduation dates, bar admissions, years of practice, experience in employment litigation and relevant information regarding the attorneys' speaking engage-

ments and publications in the field (Swartz Decl. ¶¶ 13-24;
Shavitz Decl. ¶¶ 4-13; Schaffer Decl. ¶¶ 1-8; C.K. Lee Dec. ¶¶ 1,
5-8).  The firms regularly act as class counsel in wage and hour
collective and class actions in this district (Swartz Decl. ¶¶ 8,
12; Shavitz Decl. ¶¶ 6; Schaffer Decl. ¶¶ 4-5; Lee Decl. ¶¶ 7-8).

        Mr. Swartz's declaration describes O&G as a "40+ attor-
ney firm based in New York City that focuses on representing
plaintiffs in a wide variety of employment matters, including
individual and class action litigation involving wage and hour,
discrimination and harassment claims, as well as contract and
severance negotiations." (Swartz Decl. ¶ 1).  O&G regularly
represents plaintiffs in this Court in employment related litiga-
tion and has an excellent and well-deserved reputation.  Beckman
v. KeyBank, N.A., 293 F.R.D. 467, 473, 477 (S.D.N.Y. 2013)
(Ellis, M.J.) (citations omitted).  Mr. Swartz notes that paying
clients regularly pay O&G the rates requested here (Swartz Decl.
¶ 76; Pl. Fees Mem. at 32).  Importantly, however, O&G does not
cite any cases in support of the rates they request nor do they
seek to distinguish my decision in Mills, which surveyed the case
law on this issue and awarded O&G lower rates than requested here
but higher than those typically approved in this district.  See
Mills v. Capital One, N.A., supra, 2015 WL 5730008 at *12, citing
Torres v. Gristede's Operating Corp., 04 Civ. 3316 (PAC), 2012 WL

30

3878144 at *3-*4 (S.D.N.Y. Aug. 6, 2012) (Crotty, D.J.) (awarding rates of up to $550 per hour), aff'd, 519 F. App'x 1, 3-4 (2d Cir. 2013) (summary order).

Mr. Shavitz's declaration describes the Shavitz Law Group as "a seven attorney firm based in Boca Raton, Florida, with an office in New York, New York, that focuses on represent-ing workers as plaintiffs in employment-related matters, includ-ing claims based upon individual and class-wide violations of state and federal wage and hour laws." (Shavitz Decl. ¶ 1). SLG requests rates in line with those I awarded the firm in Mills (Shavitz Decl. ¶ 25).

Mr. Schaffer's declaration describes F&S as a "7-attorney firm that represents plaintiffs only, in a wide variety of employment and consumer matters, including individual and class action litigation involving wage and hour, discrimina-tion, and harassment claims, as well as contract and severance negotiations" (Schaffer Decl. ¶ 2).  In support of the hourly rates requested for F&S, Mr. Schaffer's declaration cites to his firm's and each attorney's significant experience in prosecuting wage and hour cases as well as the fact that the firm's clients regularly accept and pay the proposed hourly rates (Schaffer Decl. ¶¶ 4-8, 12).  Mr. Schaffer's declaration does not cite any cases awarding F&S's attorneys their requested hourly rates in an

FLSA action.  I note that in one FLSA action from 2012, attorneys
Schaffer and Fitapelli were awarded an hourly rate of $350, which
was noted as "on the high side of the rate range for attorneys
with comparable levels of experience[.]"  Anthony v. Franklin
First Fin., Ltd., 844 F. Supp. 2d 504, 507-08 (S.D.N.Y. 2012)
(Jones, D.J.).

 Mr. Lee's declaration describes his firm as an
"eight-attorney firm based in New York City that focuses on
representing plaintiffs in a wide variety of employment matters,
including individual and class-wide violations of wage and hour
laws, discrimination and harassment based on sex, race, disabil-
ity or age, retaliation and contract and severance negotiations"
(Lee Decl. ¶ 1).  Although Mr. Lee asserts that courts regularly
award him his requested hourly rate of $550 (Lee Decl. ¶ 11), the
cases cited in his declaration do not support his request.  In a
recent decision, the Honorable Michael H. Dolinger, United States
Magistrate Judge, analyzed an almost identical application from
Mr. Lee and found that the cases cited did not support Mr. Lee's
requested hourly rate of $550 because those decisions awarded the
requested one-third of the fund and did not explicitly discuss
the reasonableness of an hourly rate.  See Gonzalez v.
Scalinatella, Inc., supra, 112 F. Supp. 3d at 22-23, 24-25
(reviewing the majority of the cases cited here and criticizing

32

the characterization of these decisions as approvals of a $550
hourly rate as, "at best, a woefully inartful articulation of the
state of this case law and, at worst, a blatantly self-interested
misrepresentation to the court"[9]); accord Jimenez v. KLB Foods,
Inc., 12 Civ. 6796 (JPO), 2015 WL 3947273 at *2 (S.D.N.Y. June
29, 2015) (Oetken, D.J.) (awarding Mr. Lee $350 per hour).

Although courts in this district have occasionally
awarded hourly rates of $550 and $600 to experienced senior
litigators, FLSA litigators are rarely awarded over $450 per
hour.  See Cortes v. New Creators, Inc., 15 Civ. 5680 (PAE), 2016
WL 3455383 at *7 (S.D.N.Y. June 20, 2016) (Engelmayer, D.J.)
(awarding hourly rate of $400 per hour to a partner with 37 years
of experience); Gonzalez v. Scalinatella, Inc., supra, 112 F.
Supp. 3d at 28 (awarding Mr. Lee $450 per hour in an FLSA case);
Kim v. Kum Gang, Inc., 12 Civ. 6344 (MHD), 2015 WL 3536593 at *2
n.16 (S.D.N.Y. June 5, 2015) (Dolinger, M.J.) (following a bench
trial, awarding hourly rate of $600 for a senior litigator at a
large firm and noting that the firm "has a more substantial
overhead than other small or midsize plaintiffs' firms litigating

---

[9]The only case Mr. Lee cites in his declaration that was not
discussed in Gonzalez is a proposed order prepared by counsel
that granted the requested one-third of the fund without
addressing the reasonableness of Mr. Lee's hourly rate.  See
Corte v. Fig & Olive Founders LLC, 14 Civ. 7186 (KPF) (S.D.N.Y.
Oct. 7, 2015) (Failla, D.J.) (attached as Ex. L to Swartz Decl.).

FLSA cases," quoting Kim v. Kum Gang, Inc., 12 Civ. 6344 (MHD),

2014 WL 2514705 at *2 (S.D.N.Y. June 2, 2014) (Dolinger, M.J.));

Patino v. Brady Parking, Inc., 11 Civ. 3080 (AT) (DF), 2015 WL

2069743 at *3 (S.D.N.Y. Apr. 30, 2015) (Freeman, M.J.) (awarding

hourly rate of $400 to founding partner with thirteen years'

experience in labor and employment law).[10]

Therefore, consistent with these authorities, and

considering counsel's experience, skills and level of contribu-

tion to the work, I conclude that some of the rates requested by

O&G, F&S and LLG are too high and that the hourly rates set forth

below are reasonable.  The rates I am awarding are higher than

the rates typically awarded in this district, and for some

attorneys, the rates are higher than rates awarded in Mills, and

are meant to compensate counsel for their increased experience,

---

[10]Accord Watkins v. Smith, 12 Civ. 4635 (DLC), 2015 WL
476867 at *3 (S.D.N.Y. Feb. 5, 2015) (Cote, D.J.); Easterly v.
Tri-Star Transport Corp., 11 Civ. 6365 (VB), 2015 WL 337565 at
*10 (S.D.N.Y. Jan. 23, 2015) (Briccetti, D.J.) (adopting Report &
Recommendation of Davison, M.J.); Farmer v. Hyde Your Eyes
Optical, Inc., 13 Civ. 6653 (GBD)(JLC), 2015 WL 2250592 at *14
(S.D.N.Y. May 13, 2015) (Cott, M.J.); Black v. Nunwood, Inc.,
supra, 2015 WL 1958917 at *5-*6; Patino v. Brady Parking, Inc.,
supra, 2015 WL 2069743 at *2-*3; Rosendo v. Everbrighten Inc., 13
Civ. 7256 (JGK)(FM), 2015 WL 1600057 at *8-*9 (S.D.N.Y. Apr. 7,
2015) (Maas, M.J.) (Report & Recommendation), adopted at, 2015 WL
4557147 (S.D.N.Y. July 28, 2015) (Koeltl, D.J.); Fujiwara v.
Sushi Yasuda Ltd., supra, 58 F. Supp. 3d at 437.

inflation and for the benefits the settlement will provide to plaintiffs:

| Name | Firm | Hours | Hourly Rate Awarded | Preliminary Lodestar |
|------|------|-------|---------------------|----------------------|
| Justin M. Swartz | O&G | 67.8 | 550 | 37,290.00 |
| Jahan C. Sagafi | O&G | 2.0 | 500 | 1,000.00 |
| Amber C. Trzinski | O&G | 3.7 | 360 | 1,332.00 |
| Sally J. Abrahamson | O&G | 5.4 | 360 | 1,944.00 |
| Deirdre A. Aaron | O&G | 193.9 | 330 | 63,987.00 |
| Jennifer L. Liu | O&G | .6 | 400 | 240.00 |
| Julia Rabinovich | O&G | 2.7 | 295 | 796.50 |
| Elizabeth V. Stork | O&G | 8.4 | 270 | 2,268.00 |
| Olivia J. Quinto | O&G | 9.4 | 270 | 2,538.00 |
| Jon O. Margolis | O&G | 3.0 | 550 | 1,650.00 |
| Marco A. Lopez | O&G | 4.6 | 360 | 1,656.00 |
| Morgan Marshall-Clark | O&G | .8 | 270 | 216.00 |
| Gregg I. Shavitz | SLG | 94.9 | 500 | 47,450.00 |
| Susan H. Stern | SLG | 7.4 | 475 | 3,515.00 |
| Christine Duignan | SLG | 7.0 | 425 | 2,975.00 |
| Michael J. Palitz | SLG | 14.0 | 325 | 4,550.00 |
| Brian S. Schaffer | F&S | 53.9 | 425 | 22,907.50 |
| Joseph A. Fitapelli | F&S | 2.6 | 425 | 1,105.00 |
| Frank J. Mazzaferro | F&S | 5.3 | 300 | 1,590.00 |
| C.K. Lee | LLG | 45.1 | 425 | 19,167.50 |
| **TOTAL:** | | **532.5** | | **218,177.00** |

As to the requested fees for paralegal work, in recent FLSA actions, hourly rates between $100 and $150 for paralegal work have been found to be reasonable and counsel do not cite any contrary authority. See, e.g., Navig8 Chemicals Asia Pte., Ltd. v. Crest Energy Partners, LP, 15 Civ. 7639 (PAE), 2015 WL 7566866 at *2 (S.D.N.Y. Nov. 24, 2015) (awarding hourly rate $150 for paralegal work) (Engelmayer, D.J.); Gonzalez v. Scalinatella, Inc., supra, 112 F. Supp. 3d at 29 (awarding paralegals hourly rates of $100 to $105); Guallpa v. N.Y. Pro Signs Inc., 11 Civ. 3133 (LGS)(FM), 2014 WL 2200393 at *10 (S.D.N.Y. May 27, 2014) (Maas, M.J.) (awarding paralegal hourly rate of $125) (Report & Recommendation), adopted at 2014 WL 4105948 (S.D.N.Y., Aug. 18, 2014) (Schofield, D.J.); Viafara v. MCIZ Corp., 12 Civ. 7452 (RLE), 2014 WL 1777438 at *14 (S.D.N.Y. Apr. 30, 2014) (Ellis, M.J.) (awarding an hourly rate of $125 to paralegal).   Accord- ingly, I find that a reasonable hourly rate for the six O&G paralegals for whom background information was provided to be $150.   I also find SLG's request for a $100 hourly rate for the work of its three paralegals to be reasonable.

2.    Reasonable
      Number of Hours

The party seeking attorneys' fees also bears the burden
of establishing that the number of hours for which compensation
is sought is reasonable.  Cruz v. Local Union No. 3 of Int'l Bhd.
of Elec. Workers, supra, 34 F.3d at 1160, citing Hensley v.
Eckerhart, 461 U.S. 424, 437 (1983); Wong v. Hunda Glass Corp.,
09 Civ. 4402 (RLE), 2010 WL 3452417 at *3 (S.D.N.Y. Sept. 1,
2010) (Ellis, M.J.).  Courts "should exclude . . . hours that
were not reasonably expended," such as where there is overstaff-
ing or the hours are "excessive, redundant, or otherwise unneces-
sary."  Hensley v. Eckerhart, supra, 461 U.S. at 434 (internal
quotation marks omitted).

The hours billed by plaintiffs' counsel to this matter
are reasonable.  Although the time records reflect that four law
firms and a large number of attorneys were assigned to and billed
time to this matter, the vast majority of the work, totaling
455.60 hours, was done by a group of five attorneys, Justin
Swartz, Deirdre Aaron, Gregg Shavitz, Brian Schaffer and C.K.
Lee.  The attorneys outside of this group billed less than 200
hours; these hours are not excessive or redundant and the de-
scriptions of the services provided are specific.  These hours
are, therefore, reasonable.

I also find that 84.5 hours of paralegal time for which plaintiffs' counsel seek compensation are reasonable, yielding a lodestar of $11,975.

Applying the reduced rates set forth above to the hours for which counsel seeks compensation yields a total lodestar of $230,152.00 for Counsel's attorney and staff hours.

### 3. Application of a Multiplier

Under the lodestar method, as applied in common fund cases, the Goldberger criteria[11] "indicate whether a multiplier should be applied to the lodestar." McDaniel v. Cty. of Schenectady, supra, 595 F.3d at 423. A fee award of $2,327,333.33 -- one-third of the settlement fund -- would represent a multiplier of greater than ten. Counsel have cited FLSA cases in this district where, in the course of awarding fees based on the application of the percentage-of-the-fund method, judges have approved multipliers of up to 7.6. See Pena v. Le Cirque, Inc., 14 Civ. 7541 (FM), Fairness Hearing, dated Jan. 21,

---

[11]The Goldberger criteria are similar to those in Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, supra, 522 F.3d at 184 and are applied in common fund cases. See McDaniel v. Cty. of Schenectady, supra, 595 F.3d at 419-23 (discussing the applicability of the criteria in Arbor Hill and Goldberger to statutory fee-shifting and common fund cases, respectively).

2016 (S.D.N.Y.) (Maas, M.J.), at 7 (attached as Ex. A to Swartz
March 11, 2016 Letter) (approving award of one-third of the fund
and noting that the multiplier of 4.9 is "well within the range
that courts have awarded"); Yuzary v. HSBC Bank USA, N.A., 12
Civ. 3693 (PGG), 2013 WL 5492998 at *11 (S.D.N.Y. Oct. 2, 2013)
(Gardephe, D.J.) (approving award of 31.7% of the fund constitut-
ing 7.6 times the lodestar as "nearer the higher end of the range
of multipliers"); Beckman v. KeyBank, N.A., supra, 293 F.R.D. at
482 (approving award of one-third of the fund constituting 6.3
times the lodestar as "near the higher end of the range of
multipliers that courts have allowed"); Sewell v. Bovis Lend
Lease, Inc., 09 Civ. 6548 (RLE), 2012 WL 1320124 at *10, *13
(S.D.N.Y. Apr. 16, 2012) (Ellis, M.J.) (awarding one-third of the
fund, which yielded a multiplier of 2.93).[12]  Thus, the multi-
plier Counsel seek here is above the range of multipliers awarded
in FLSA cases in this district.

  In Fujiwara, Judge Pauley determined that "[t]here is
little consensus in this district on the appropriate range for

---

   [12]Counsel have provided a string cite of cases for the
proposition that courts regularly approve fees "up to eight times
[the] lodestar, and in some cases, even higher" (Pls. Fees Mem.
at 30).  As Judge Pauley noted in Fujiwara, "[t]his exact sen-
tence . . . has made its way into many court 'decisions' in this
circuit via proposed orders drafted by plaintiffs' attorneys" and
"provide weak support for such lofty multipliers."  Fujiwara v.
Sushi Yasuda Ltd., supra, 58 F. Supp. 3d at 437-38.

lodestar multipliers," and concluded that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases." Fujiwara v. Sushi Yasuda Ltd., supra, 58 F. Supp. 3d at 438-39.  This case is more complex than the average FLSA case, however, and, for the reasons discussed below, I conclude a multiplier of 3.10 to the lodestar is warranted and is supported by the Goldberger analysis.

        a.   Counsel's
            Time and Labor

      Counsel's efficient and effective representation of plaintiffs in bringing this action and securing the settlement warrants an increase in the lodestar figure.  Counsel reasonably expended approximately 620 attorney and legal staff hours over three years to secure the settlement and reach the point of final approval.  During this time, Counsel conducted an investigation into plaintiffs' claims and defendants' business practices, interviewed the named and early opt-in plaintiffs, interviewed other former employees of defendants, communicated with plaintiffs to keep them apprised of the status of the case, represented plaintiffs at a mediation, successfully negotiated a settlement with defendants without the need to litigate and proceeded efficiently after litigation was commenced (Swartz

Decl. ¶¶ 33-47).  Counsel will also spend additional hours to
administer the settlement.[13]

> b.   The Litigation's
>      Magnitude and Complexity

Counsel also correctly note that this case is larger
and more complex than the typical FLSA collective action.  "The
size and difficulty of the issues in a case are significant
factors to be considered in making a fee award."  Sukhnandan v.
Royal Health Care LLC, 12 Civ. 4216 (RLE), 2014 WL 3778173 at *10
(S.D.N.Y. July 31, 2014) (Ellis, M.J.).  "Among FLSA cases, the
most complex type is the 'hybrid' action brought here, where
state wage and hour violations are brought as an 'opt out' class
action pursuant to Rule 23 in the same action as the FLSA 'opt
in' collective action pursuant to 29 U.S.C. § 216(b)."  Siler v.
Landry's Seafood House-North Carolina, Inc., 13 Civ. 587 (RLE),
2014 WL 2945796 at *9 (S.D.N.Y. June 30, 2014) (Ellis, M.J.); see
also Henry v. Little Mint, Inc., 12 Civ. 3996 (CM), 2014 WL
2199427 at *13 (S.D.N.Y. May 23, 2014) (McMahon, D.J.).  Here,
the FLSA settlement resolves the claims of 80 FLSA class members
and 414 Rule 23 class members from two different states (Swartz

---

[13]Counsel have represented that they usually spend another
$50,000.00 to $100,000.00 in the claims administration process
(Fairness Hearing Tr. at 7).

Decl. ¶ 58).  There is overlap between the classes and the settlement negotiated by counsel took into account the various circumstances presented.  Therefore, this factor also favors the multiplier.

              c.    The Risk
                  <u>of Litigation</u>

      Counsel faced risk because they represented plaintiffs on a contingent basis and have received no fee payments for their work since they began their investigation of plaintiffs' claims in 2013 (Swartz Decl. ¶¶ 33-36, 73).  "Uncertainty that an ultimate recovery will be obtained is highly relevant in deter-mining the reasonableness of an award."  <u>Febus v. Guardian First Funding Grp., LLC</u>, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (Stein, D.J.) (quotation marks and citation omitted); <u>accord Henry v. Little Mint, Inc.</u>, <u>supra</u>, 2014 WL 2199427 at *14.  "Risk falls along a spectrum, and should be accounted for accordingly." <u>Goldberger v. Integrated Res., Inc.</u>, <u>supra</u>, 209 F.3d at 54.  In addition, victory in a contested suit would have been far from clear as there was case law contrary to plaintiffs' position (<u>see</u>

Pls. Fees Mem. at 2-4 (citing cases)).[14]  Accordingly, the third

Goldberger criterion also supports a reasonable multiplier.

        d.    The Quality
              of Representation

        The quality of Class Counsel and their representation

of plaintiffs also supports the application of a multiplier.  "To

determine the 'quality of the representation,' courts review,

among other things, the recovery obtained and the backgrounds of

the lawyers involved in the lawsuit."  Taft v. Ackermans, 02 Civ.

7951 (PKL), 2007 WL 414493 at *10 (S.D.N.Y. Jan. 31, 2007)

(Leisure, D.J.); see also Whitehorn v. Wolfgang's Steakhouse,

Inc., 275 F.R.D. 193, 200 (S.D.N.Y. 2011) (Sand, D.J.) ("There is

no dispute that Plaintiffs' counsel are qualified and experienced

in class action law and wage and employment litigation in New

York.").  Each of the firms representing plaintiffs have signifi-

---

[14]Further, the fact that Counsel have waited three years to
receive payment for their work also favors the increase of the
fee award.  See Raniola v. Bratton, 96 Civ. 4482 (MHD), 2003 WL
1907865 at *6 (S.D.N.Y. Apr. 21, 2003) (Dolinger, M.J.) (in Title
VII case, noting that delay of four years "militates in favor of
a more generous award than might otherwise be available"), citing
Missouri v. Jenkins by Agyei, 491 U.S. 274, 284 (1989) ("[a]n
adjustment for delay in payment is, we hold, an appropriate
factor in the determination of what constitutes a reasonable
attorney's fee under § 1988"); Pennsylvania v. Delaware Valley
Citizens' Council for Clean Air, 483 U.S. 711, 716 (1987) ("[i]n
setting fees for prevailing counsel, the courts have regularly
recognized the delay factor").

cant experience representing employees in wage and hour class and collective actions in this district (Swartz Decl. ¶¶ 8-12; Shavitz Decl. ¶¶ 4-6; Schaffer Decl. ¶ 4; Lee Decl. ¶¶ 7-8).  As noted above, O&G has an excellent reputation in this district in the field of employment litigation.  See Mills v. Capital One, N.A., supra, 2015 WL 5730008 at *11; Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 473; Torres v. Gristede's Operating Corp., supra, 2012 WL 3878144 at *3-*4.  Counsel conducted a thorough investigation of plaintiffs' claims through in-depth interviews with plaintiffs and early opt-in plaintiffs as well as other former employees of defendants, review of documents obtained from plaintiffs and defendants, background research on defendants and through legal research on the factual and legal issues unique to this group of plaintiffs (Swartz Decl. ¶¶ 33-47).  Counsel's work on plaintiffs' behalf, aided by their experience, ultimately aided plaintiffs in the development of the claims and in reaching a fair settlement at an early stage in negotiations with defendants.  I conclude that the fourth criterion also weighs in favor of the multiplier.

                    e.   Relationship of
                         the Fees to the Settlement

        Under Goldberger, "[c]ourts consider the size of a
settlement to ensure that the [fees] awarded do[] not constitute
a windfall."  Sukhnandan v. Royal Health Care of Long Island LLC,
supra, 2014 WL 3778173 at *13.  "Where the size of the fund is
relatively small, courts typically find that requests for a
greater percentage of the fund are reasonable."  Sukhnandan v.
Royal Health Care of Long Island LLC, supra, 2014 WL 3778173 at
*13, citing In re Gilat Satellite Networks, Ltd., 02 Civ. 1510
(CPS)(SMG), 2007 WL 2743675 *16 n. 41 (E.D.N.Y. Sept. 18, 2007).
Counsel estimate the $6,982,000.00 settlement represents approxi-
mately 68% of the class's unpaid wages, assuming that class
members worked an average 7.5 overtime hours in 40 weeks per year
and assuming that defendants prevail on their fluctuating work-
week argument (Swartz Decl. ¶ 53).  Using these assumptions, an
award of $713,471.20 is not a windfall considering that it
represents 10.2% of the $6,982,000.00 settlement fund and compen-
sates counsel for the approximately 620 attorney and paralegal
hours spent securing a favorable settlement for plaintiffs.  Even
after attorneys' fees, costs, service awards and claims adminis-
tration fees are distributed from the fund, plaintiffs will still

                              45

recover a significant amount of their estimated actual damages.
Thus, this criterion also weighs in favor of the fee award.

> f.   Public Policy
>       Considerations

Finally, "[w]hen determining whether a fee award is
reasonable, courts consider the social and economic value of the
class action, 'and the need to encourage experienced and able
counsel to undertake such litigation.'"  Siler v. Landry's
Seafood House-North Carolina, Inc., supra, 2014 WL 2945796 at
*11, quoting In re Sumitomo Copper Litig., 74 F. Supp. 2d 393,
399 (S.D.N.Y. 1999) (Pollack, D.J.).   "Adequate compensation for
attorneys who protect wage and hour rights furthers the remedial
purposes of the FLSA and [state wage and hour laws]."  Henry v.
Little Mint, Inc., supra, 2014 WL 2199427 at *15 (internal
quotation marks and citation omitted, alteration in original).
However, these public policies must be balanced against the need
to award fees "with an eye to moderation," particularly when the
fee application is unopposed and there is little incentive for
plaintiffs to object when the impact on their individual poten-
tial recovery of any increase or decrease in the fee award is
incremental.  Goldberger v. Integrated Res., Inc., supra, 209
F.3d at 53 (internal quotation marks and citation omitted).

46

Public policy also favors consistency with respect to fee awards; in the absence of countervailing factors such as differences in the qualifications of counsel or the complexity of the issues, there should not be wide disparities in the fee awards to the same firm (or attorneys with similar qualifications) in different litigations involving similar legal and factual issues.  See generally Wells Fargo Bank N.A. v. Walls, 1:12-cv-664 (LMB/IDD), 2013 WL 869902 at *3 (E.D. Va. Mar. 4, 2013), aff'd, 543 F. App'x 350 (4th Cir. 2013) (approving hourly rates because they were consistent with the rates previously awarded to the same attorneys).

Counsel are correct that an increase in their fee will not substantially impact the award to plaintiffs nor is it contrary to the public interest.  This is therefore another factor in favor of awarding counsel a multiplier.

As discussed above, there are substantial similarities between this case and Mills and Ballinger but there are also differences in the results achieved that merit consideration in the fee award.  In Mills, where counsel secured a settlement that was not as favorable as the one achieved in this case, I found that a multiplier of 2.21 yielding an award of $500,000.00 or 16.67% of the fund was reasonable.  See Mills v. Capital One, N.A., supra, 2015 WL 5730008 at *15, *17.  I came to that conclu-

47

sion in part by comparing that case to Ballinger, which involved
similar legal issues and settled at a comparable stage.  Mills v.
Capital One, N.A., supra, 2015 WL 5730008 at *16-*17.  I con-
cluded that in the absence of some basis "on which to distinguish
[Mills] from Ballinger (and none has been suggested), it [was]
impossible to justify a higher fee award in [Mills], given that
[Mills] was of similar complexity, required fewer hours and
resulted in a smaller settlement, than Ballinger."  Mills v.
Capital One, N.A., supra, 2015 WL 5730008 at *17.  This case
involved a similar number of attorney and staff hours as Mills
and settled at a similar stage; however, counsel negotiated a
better settlement for the plaintiffs in this case.  As opposed to
the $3,000,000.00 settlement counsel achieved in Mills for the
over $1,300 class members representing approximately 49% of the
unpaid wages (Mills v. Capital One, N.A., supra, 2015 WL 5730008
at *6-*7), counsel here successfully negotiated a $6,982,000.00
settlement for the approximately 500 class members here repre-
senting approximately 68% of the estimated lost wages.  Further,
as discussed at pages 17-19 above, unlike Mills and Ballinger,
the manner in which the settlement funds will be distributed
under the Settlement Agreement is more favorable to plaintiffs
and will result in more funds reaching plaintiffs rather than
reverting to defendants (see Settlement Agreement §§ 2.10(A)),

3.1(D),(F)).  Thus, as a matter of policy, I find that counsel
have demonstrated a basis for awarding counsel a greater multi-
plier and ultimate fee award than that attained in Mills.

       g.  Summary

     In light of the foregoing, I conclude that a reasonable
Goldberger multiplier is 3.10, yielding a fee award of
$713,471.20.

   D.  Costs

     Class counsel also seek reimbursement of costs of
$19,136.00 in connection with their representation of plaintiffs
(Swartz Decl. ¶ 70 & Ex. E; Shavitz Decl. Ex. A).

     "Attorneys may be compensated for reasonable
out-of-pocket expenses incurred and customarily charged to their
clients, as long as they 'were incidental and necessary to the
representation' of those clients." Miltland Raleigh-Durham v.
Myers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) (Motley, D.J.),
quoting Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818
F.2d 278, 283 (2d Cir. 1987).  Here, class counsel's expenses,
including filing fees, damages expert fees,[15] travel expenses,

_____

    [15]See Kuper v. Empire Blue Cross and Blue Shield, 99 Civ.
                                                   (continued...)

postage charges and plaintiffs' share of the mediator fees, are reasonable and were incidental and necessary to the representation of the class.   Thus, I award class counsel reimbursement of their requested litigation expenses in the amount of $19,136.00.

IV.   Conclusion

Accordingly, for all the foregoing reasons, Counsel is awarded attorneys' fees in the amount of $713,471.20 and reimbursement of costs and expenses in the amount of $19,136.00.

The Clerk of the Court is directed to mark Docket Item 41 as closed.

Dated:   New York, New York
         September 13, 2016

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

---

[15](...continued)
1190 (JSG)(MHD), 2003 WL 23350111 at *14 (S.D.N.Y. Dec. 18, 2003) (Dolinger, M.J.) (Report & Recommendation) (awarding expert witness fees sought as part of application for costs following jury award in disability discrimination case), adopted at, 2004 WL 97685 (S.D.N.Y. Jan. 20, 2004) (Gwin, D.J.).

Copies transmitted to:

Deirdre A. Aaron, Esq.
Justin M. Swartz, Esq.
Outten & Golden, LLP
29th Floor
3 Park Avenue
New York, New York  10016

Gregg I. Shavitz, Esq.
Susan H. Stern, Esq.
Shavitz Law Group, P.A.
Suite 404
1515 S. Federal Highway
Boca Raton, Florida  33432

Brian S. Schaffer, Esq.
Frank J. Mazzaferro, Esq.
Fitapelli & Schaffer, LLP
12th Floor
475 Park Avenue South
New York, New York  10016

Allan S. Bloom, Esq.
Rachel Santoro, Esq.
Proskauer Rose LLP
11 Times Square
New York, New York 10036